## The State of Iowa v. Rorabacher.

1. **Continuance:** GROUNDS FOR. Subject to the rule that a continuance will not be granted for any cause growing out of the negligence or fault of the party applying therefor, it may be allowed for any cause which satisfies the court that substantial justice will be more nearly attained.

2. —— DISCRETION. Much is left to the discretion of the court in passing upon an application for continuance, but its ruling should not be arbitrary or in violation of the rights of the parties. An appellate court will interfere only in cases of manifest injustice.

3. —— GROUNDS OF BELIEF. An application for a continuance upon the ground of the absence of a witness, must state facts showing reason-

able grounds of belief that his attendance or testimony will be procured by the next term. A mere statement of a belief is not sufficient.

4. —— IMPEACHING EVIDENCE. When an application for a continuance is made for the purpose of obtaining evidence impeaching the character of an adversary's witness, the matter rests peculiarly in the discretion of the court; and an appellate court should seldom, if ever, interfere therewith.

5. Evidence: TO SUSTAIN WITNESS. Evidence to sustain the statements of a witness may be properly excluded, where his evidence has not been impeached or in any manner attacked.

6. —— RECALLING WITNESS. Whether a witness may be recalled after examination and cross-examination to explain an alleged contradiction in his evidence, rests in the discretion of the court trying the cause, and its ruling will not be reversed by the Supreme Court in the absence of a showing of abuse.

7. —— THREATS. Threats made by defendants charged with the commission of crime, after the commencement of the prosecution, may in some cases be considered by the jury as indicating the disposition of the accused with reference to the offense charged.

8. Instructions: PRINCIPLES OF LAW: REASONS. It is the duty of the court to charge the jury on the trial of a cause as to the principles of law involved in them, *without* the reasons by which they are sustained.

9. —— REASONABLE DOUBT. It is a reasonable doubt entertained by the *jury*, and not by any *one member* thereof, that justifies an acquittal.

10. —— REPETITION. A judgment will not be reversed because of a refusal by the court to give an instruction which was proper in itself, when the record shows that it was substantially embraced in other instructions which were given.

11. Evidence: ADMISSIONS. The body of the crime being established by *other evidence, it was not erroneous for the court to instruct the jury, that if statements made by the defendant, which were in evidence, could not be reconciled upon any other reasonable hypothesis than that of his guilt, that such evidence might warrant a conviction.*

BURGLARY. — For the circumstances under which the offense charged was committed, see *The State of Iowa* v. *Knight, ante.*

The material facts will be found in the opinion.

*Preston & Son* and *W. T. Barker*, for the appellant.

*I. F. Allen*, Attorney-General (with whom *Chandler*), for the State.

WRIGHT, Ch. J.— The indictment was found in Buchanan county; a change of venue was granted to Delaware, and afterwards the present defendant, obtained a change of venue to Bremer county, in the 12th judicial district, where he was tried and convicted at the May Term, 1865, of the District Court, and sentenced to the penitentiary for six years.

The objections made to the regularity of this conviction, we shall proceed to consider as briefly as possible, and as near as may be in the order presented by counsel.

I. The objection urged to the manner of selecting the grand jury, is not presented by the record, in such a manner as to enable us to judge what action was had thereon in the court below. Waiving this defect, however, there seems to be no other objections to the proceedings in this respect, than were considered in the case of Knight (*ante*), and it is sufficient to say that we adhere to the ruling there made.

II. The defendant was indicted in September, 1864, and was then in custody. On the 9th of May he filed his affidavit and motion for a continuance, which was overruled. On the same day he filed a "further and amended affidavit." This application was also overruled, and of this action the defendant in the second place complains.

These affidavits and the papers connected therewith cover some eighteen pages of the record. As every question of this character turns, for the most part, upon the peculiar circumstances of each case, we shall content ourselves with stating the rules which justify our affirmance of the ruling of the court below, without setting out the matter contained in these affidavits.

The State of Iowa v. Rorabacher.

Subject to the rule that a continuance will not be granted for any cause growing out of the fault or negligence of

**1. CONTINUANCE: grounds for.** the party applying therefor, it may be allowed for any cause which satisfies the court that substantial justice will be thereby more nearly obtained, and this rule applies alike in criminal and civil cases. (Rev., §§ 3009, 4749, 4750.) We need no more than the language of the statute, for the proposition that the object of continuing a cause, is that substantial justice may be more nearly attained. And this fact should be made to appear, otherwise the application may be properly overruled. (*The State, of Iowa* v. *Tilghman*, 6 Iowa, 496.) In determining such applications, a court cannot act arbi-

**2. —— discretion.** trarily, nor in violation of the manifest rights of parties. And yet much must necessarily be left to the sound legal discretion of the judge hearing the same. (*State of Iowa* v. *Cox*, 10 Id., 301; *Childs* v. *Heaton*, 11 Id., 271; *State of Iowa* v. *Cross*, 12 Id., 66; *Same* v. *Arnold*, 11 Id., 246; *Purrington* v. *Frank*, 2 Id., 565.) And see as to rules for construing affidavits for a continuance, *Brady* v. *Malone*, 4 Id., 146; *Mason* v. *Anderson*, 2 Litt., 233; and see also *Widner* v. *Hunt*, 4 Iowa, 355, and *Purrington* v. *Frank*, supra, where it is said that a palpable case of injustice must be presented before the appellate court will interfere with the discretion of the court below, in granting or refusing a continuance. In the first of these cases it is also held that it is in the discretion of the court to refuse leave to amend an affidavit for a continuance, or to file a new one, unless for the purpose of presenting facts transpiring or coming to the knowledge of the party since filing the first, and that such a course should be allowed with great caution. (But see Rev., § 3015.) The application, when based upon the absence of a witness, must state

**3. —— grounds of belief.** *facts* showing reasonable grounds of belief, that his attendance or testimony will be procured by

the next term. (§ 3011.) This contemplates more than a mere statement of a *belief* that the testimony can be procured. When the application is made to obtain testimony impeaching the character of an adversary's witnesses, the matter rests even more peculiarly in the discretion of the court below, and this court should seldom, if ever, interfere therewith.

Applying these rules, we remark, that while we think the court below might reasonably and properly have granted this continuance, and while this disposition of the case, in view of all the circumstances, would, treating it as an original question, have been quite as satisfactory to our minds, yet we do not think there was such abuse of discretion as to justify our interference. The application was based upon the absence of witnesses, all but one to be used to impeach the witnesses on the part of the State. There is a statement of a *belief* simply, that the testimony can be procured, but no *facts* showing reasonable grounds. Then, as to the question of diligence, the facts were more peculiarly in the knowledge of the court below, than ours, and upon the whole case made, looking at the entire record, while the question is by no means free from doubt, we cannot say there was error in overruling the application.

III. One Pollard was a witness for the defense, and stated that on the night of the 17th of March, 1864 (the time of the alleged burglary), he staid at the house of one Alex. Rorabacher, and was there all night. The defendant proposed to prove by the wife of Pollard and other witnesses, for the purpose of corroborating the witness Pollard (and to rebut the testimony offered by the State), that he was and did remain at said house on the night named. This testimony was excluded, and defendant excepted.

5. EVI-DENCE: to sustain witness.

The court could properly exclude the corroborating testimony until that of Pollard was impeached, or in some

The State of Iowa v. Rorabacher.

manner attacked. That it was thus attacked nowhere appears. Nor does it appear what testimony the State had offered on this subject to justify the introduction of the offered testimony for rebutting purposes. There may have been none. Under such circumstances, of course we cannot say that the court erred.

IV. The bill of exceptions recites that a witness (Jones) was examined and cross-examined, and defendant's counsel 6. —— recall-ing witness. proposed to "reëxamine him upon the same subject matter, for the purpose of explaining an apparent discrepancy or contradiction." This was not allowed, and of the refusal defendant complains. We need only say that the necessity of this reëxamination, or the right of the party to the privilege claimed, is not apparent from the record. That there was in fact any contradiction does not appear. It was a matter in the discretion of the court below, and we cannot say that it was abused.

V. Appellant complains of error in giving, modifying 7. —— threats. and refusing certain instructions.

1. This instruction was asked: "Any threats made by the defendant, since the commencement of this prosecution against the parties engaged therein, such as threatening to have satisfaction or revenge on such parties, is not evidence that can be considered by the jury in determining the guilt or innocence of defendant." This was given, the court adding, "except as links in a chain of testimony to show persistency in the crime charged." It is difficult to perceive the necessity of this modification or addition, and yet we cannot say that it was error. The instruction itself was not correct for all cases. We can readily see that threats thus made, might seem to indicate a mind equal to the commission of the crime charged or any other. While an innocent man might use such threats, yet they are more consistent with a wicked disposition, than a life

of honesty or integrity. And when the testimony shows, as in this case, that the probable criminals were discovered by a series of long continued and well conceived plans, persistently carried out by police officers and detectives, admitted into the confidence of the prisoners, expressions and threats may have been made and used, from which the jury could see a determination to persist in the crime; and the development of a feeling extremely inconsistent with innocence. If the modification was susceptible of the construction, that the court meant thereby that defendant admitted, by such threats, the truth of the charge against him, it would of course be erroneous. This, however, is not its fair construction. All that is meant is that such threats are only proper as showing the mind, spirit and purpose of the defendant, in his defense and in relation to the crime charged.

2. Defendant asked the court to instruct that, "with respect to all verbal admissions, it may be observed that 8. INSTRUC- they ought to be received with great caution, the TIONS: prin- ciples of evidence consisting, as it does, in the mere repe- law: rea- sons. tion of oral statements, is subject to much imperfection and uncertainty," &c., following Mr. Greenleaf's argument, showing generally the danger of such testimony. For some observations on this subject, and that a court is not *bound* to thus instruct, though it may do so, see *The State of Iowa* v. *Turner*, at the present term. Then, again, the general rule as to the weight due to such admissions had already been given to the jury, and more could not be required. 1 Bishop Cr. Law, § 291.

3. The tenth instruction asked for the defendant was as follows: "If any *one* of the jury entertain a reasonable 9. — rea- doubt as of the sufficiency of the proof to estab- sonable doubt. lish any one material averment in the indictment, you must give the defendant the benefit of such doubt, [and acquit the defendant.]" The court modified this by

striking out the words in brackets. As asked, it was clearly objectionable. Such a proposition would entitle a party to an *acquittal* if any *one* juror entertained a reasonable doubt upon any material averment. It is a reasonable doubt entertained by the *jury*, and not any *one member* thereof, that justifies an acquittal.

4. An instruction was asked (No. 15) upon the subject of reasonable doubt, and refused. Conceding that

10. —— rep-
etition.

it contained the law, and that the court might properly have given it in the very language, there was no prejudicial error in the refusal, as the substance and full force of it is found in what was said to the jury in other instructions. Looking at the tenth instruction above quoted, it will be found that the doctrine of reasonable doubt was carried as far as any defendant could reasonably ask. Then, again, the court, in the instructions in chief, at the instance of the State and on the request of the defendant, repeatedly and in many forms amplified and stated the law on this subject so fully that more could not reasonably or properly be required. When the rule upon this subject, its meaning and intent, is once clearly stated, there is no necessity for repeating it. To say no more, one effect of such a practice is to magnify the effect of this reasonable doubt (eminently proper to be kept in view in criminal trials), and to lead jurors to conclude that it means more than its name (reasonable) legitimately imports.

5. Testimony was introduced, tending to show certain conversations had with the prisoner upon the subject of

11. Evi-
dence: ad-
missions.

the alleged burglary. In relation to these the jury were told that if such conversations occurred as stated, and that defendant's statements could not be reconciled upon any other reasonable hypothesis than that of his guilt, then, upon such evidence, they might convict. This ruling is assigned as error, though upon what ground is not very clearly shown. If upon the ground that it

might authorize a conviction upon an uncorroborated con-
fession, or other proof showing the body of the crime, the
answer is that there was, outside of these conversations,
abundant and uncontroverted proof, that the offense was
committed. Not only so, but the thought of the instruc-
tion seems to have been to advise the jury of the weight
due to such admissions, and to have no relation to the
statute requiring other proof of the commission of the
offense. As far as it goes it is correct enough. That it
did not go further and cover all that might properly enough
have been said in the same connection, does not vitiate it.
The jury could not reasonably have been misled.

We have thus noticed all the errors relied upon for a
reversal, and are brought to the conclusion that the judg-
ment must be

Affirmed.