WILLIAM P. CORBIN

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield January 18, 1890.*

1. CONTINUANCE—*absence of witnesses—diligence.* A person charged with the crime of murder had subpœnas duly issued for his witnesses, two of whom failed to appear, though served in good time, and could not be found on attachment. Another important witness, though a resident of the county, could not be found by the officer, and it was shown, on a motion for a second continuance, that an important witness resided in the State of Indiana, who had promised to attend as a witness, and that a messenger was sent after such witness, and found that he could not leave his home on account of serious illness in his family: *Held,* that these facts, presented by affidavits, showed sufficient diligence to prepare for the trial.

2. SAME—*materiality of testimony sought—and of its cumulative character.* On the trial of one upon the charge of murder, the evidence was conflicting and contradictory as to whether the defendant or the person killed made the first assault and fired the first shots. The defendant, by his affidavit for a continuance, after showing due diligence

to procure the attendance of his witnesses, to no avail, stated that he expected to procure the attendance of the absent witnesses by the next term, and could prove by some of them that the deceased made a violent attack on him, first with brick-bats and afterwards by shooting at him, before he fired any shot in return, and by others, of threats by the deceased to kill the affiant, and that the deceased left his room with a revolver, saying he was then going to kill affiant; that he could not prove such facts so well by any other witnesses, for the reason they were not so near to the scene of conflict, and had not the same means of knowing the facts: *Held,* that the affidavits showed sufficient ground for a continuance, and that it was error to refuse it.

3.    Where a defendant's guilt is not so thoroughly established that the court can say the jury would not have found differently had the absent witnesses been present and testified to material matters alleged, this court will be justified in reversing a judgment of conviction whenever the trial court has erred in overruling a motion for a continuance.

4.    The objection that the testimony of an absent witness would be merely cumulative, can have no force when there is an irreconcilable conflict in the testimony. In such a case, the number testifying on a side becomes of great importance. Nor can it apply when the party knows of no other witness by whom he can so well and clearly prove the facts as by the absent witness.

WRIT OF ERROR to the Circuit Court of Moultrie county; the Hon. C. B. SMITH, Judge, presiding.

Mr. JOHN R. EDEN, and Mr. ANTHONY THORNTON, for the plaintiff in error.

Mr. GEORGE HUNT, Attorney General, Mr. JOHN E. JENNINGS, State's Attorney, and Mr. H. J. HAMLIN, for the People.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court:

This was an indictment found in the circuit court of Moultrie county, charging the plaintiff in error, William P. Corbin, with the murder of Charles T. Harris, in said county. The cause was tried at the April term, 1888, of said court, being the next term after the term at which the indictment was returned. The jury found the defendant guilty of murder, and fixed his punishment at fifteen years in the penitentiary. The

court overruled motions for new trial and in arrest of judgment, and rendered a judgment in accordance with the verdict.

Prior to the commencement of the trial the defendant entered his motion for a continuance, which was founded on several affidavits, but which the court overruled, and the defendant excepted, and upon which ruling error is assigned. In support of the motion, the defendant's affidavit was filed, showing the absence of Alexander Criswell, Nathan Glover, John Monger, L. Lambrecht, John Williams and L. Lux. Lambrecht and Glover appeared and testified. Lux and Monger had both been subpœnaed, and attachments were issued for them, but which were not served, and they failed to appear. They both resided in this State, one at Litchfield and the other at Peoria. Criswell lived at Terre Haute, Indiana. The affidavit shows that Miles Greenwood had been sent to Terre Haute to procure the attendance of Criswell, and Greenwood's affidavit, also filed in support of the motion, shows that he knows Criswell; that he went at the request of defendant's counsel to see Criswell; that he saw him; that Criswell told him that he was willing to come to Sullivan, the county seat of Moultrie county, and testify on the trial, and would come as soon as the condition of his family would permit him to leave home; that said affiant left Criswell on the day before, May 6, 1888, at one o'clock P. M.; that Criswell's child, about six years old, was in bed, unable to help itself, and had pneumonia, was under the care of a physician, and needed the care and personal attention of its father; that the wife of Criswell was about to be confined, and the other children were too small to attend the sick child, and that Criswell promised him that he would attend the trial as soon as he could safely leave his family. Williams resided in the county, but was absent and could not be found, although subpœna had been duly issued for him.

The affidavit of plaintiff in error further showed that there would be a conflict in the testimony as to who was the assail-

ant in the affray between him and Harris; that he had some witnesses in attendance by whom he expected to prove that the deceased was the assailant, but that they did not have the same means and opportunity of witnessing the affray, and were not so near the parties at the time thereof as the witnesses mentioned in the affidavit; that he expected to prove by Criswell that he (Criswell) was in the street, in plain view of himself and Harris, at the time of the alleged killing of Harris, and that before defendant did anything to said Harris, or made or attempted to make any assault upon him, Harris threw one or more bricks at him (plaintiff in error) when within ten feet of each other, and that said Harris fired a pistol at affiant before the latter made any assault upon Harris, or fired a pistol toward him. The same affidavit shows that the witness Monger was in the drug store of the deceased on the day of the affray, and about twenty or thirty minutes before Harris was shot; that deceased had a pistol in his hands and was cleaning it, and he then said that he was in trouble, and would not do any business until he had settled with a certain man, whom he did not name, and that he thereupon started out of the store, saying he would go and kill him. The same affidavit further shows that affiant can prove by said witness L. Lux, that he was in Sullivan on the day of the shooting, that he saw it, and that Harris fired the first shot. It is further shown by said affidavit that defendant expected to procure the attendance of all of said witnesses at the next term of the court; that they were not then in attendance on the court; that the main facts he expected to prove by said witnesses were true; that said witnesses were not absent with his consent or by his procurement, and that the application for continuance was not made for delay. In addition, the affidavits of Dr. Pickering, and Lansden, the sheriff of the county, were also filed, showing that the defendant was dangerously and seriously ill at noon of the day the trial commenced; and also the affidavit of Judge Anthony Thornton,

the leading counsel for the defense, showing his inability, on account of the condition of his health, to properly try the cause.

At the prior term of court at which the indictment had been returned, plaintiff in error had obtained a continuance upon his affidavit, showing that on account of his confinement he had had no opportunity to prepare for trial, and that he could not safely proceed to trial without the following witnesses, who were not in attendance, to-wit: Nathan Glover, who it was stated resided in the State of Missouri; John Monger, of Peoria, Illinois; Isaac Keetz, of Macon county; Samuel Pfeifer and Alexander Criswell, of Moultrie county, and a witness whose name and residence were unknown, and also stating what he expected to prove by each of said witnesses.

No question is made in the argument of counsel for the People, as to the sufficiency of the diligence of the defendant to procure the attendance of the witnesses Criswell, Monger, Williams and Lux, and it does not appear that the defendant was guilty of any want of the exercise of proper diligence in that respect. Criswell, although residing out of the State at the time of the trial, had promised to attend, and the defendant sent a messenger to see him shortly before the trial, and he produces the affidavit of the messenger, who testifies that he went to Criswell's home, in Terre Haute, and found that his child was confined to its bed with pneumonia, and that he was necessarily detained in attending upon his child. Under such circumstances as are here shown, the witness would not be compelled to leave his family, if a resident of the State, and regularly subpœnaed as a witness in the case. He promised Greenwood that he would attend and testify in the cause so soon as he could safely leave his family. The two witnesses Monger and Lux were duly served with subpœna, issued at the instance of defendant, to appear and testify, and attachments were issued for them as soon as it was ascertained they were not in attendance, but which were not served in

time to procure their attendance at any time during the trial. A subpœna had been issued for the witness Williams, and although his family lived in the county, he was absent from home and could not be served.

The materiality of the testimony of these witnesses is at once apparent. If it were not so apparent, the reading of this record certainly showed that it was of vital importance to the defendant. The affidavit of the defendant stated that he was informed, and believed it to be true, that the prosecution would attempt to prove that in the affray in which Harris came to his death, he (Corbin) was the assailant, and that he first attacked the deceased and fired the first shot, and that as to such matters and facts there would be a conflict in the evidence,—and the sequel shows this statement at least to have been absolutely true. The affidavit for continuance also showed that the defendant expected to prove by Williams, that about two weeks before the shooting the deceased showed Williams a pistol, and said that he would kill defendant with it. As before stated, the evidence on the trial was sharply conflicting as to whether the deceased or the defendant made the first assault. If the position assumed by the defendant and his witnesses in their testimony was true, the defendant was standing upon the walk in front of his store and was first assaulted by Harris, the deceased, who threw with great violence, at a distance of only a few feet, two large brick-bats at the defendant, and then drew his pistol and fired upon the defendant, before the defendant did anything, or attempted in any way to repel such assault. On the other hand, the testimony on the part of the prosecution, to which it is evident the jury have given credence, showed that the defendant was the assailant, and fired upon the deceased without apparent provocation or justification. In such condition of the case, the testimony of two additional witnesses, Criswell and Lux, corroborating the defendant's version of the affair, was of vital importance.

Where the defendant's guilt is not so fully established that the court can say the jury would not have found differently had the absent witnesses been present and testified to the material matters stated in the affidavit, the court will be justified in reversing the judgment, whenever the trial court has erred in overruling the motion for a continuance. From this affidavit the court was advised that there would be a conflict in the evidence, upon the vital and material facts upon which the conviction or acquittal of the defendant depended. It was shown that witnesses were not in attendance who would testify, if present, to material facts, and sustain and corroborate the testimony of defendant and his witnesses. It is apparent that all the diligence was exercised by the defendant that was in his power to exercise, and the probability of the attendance of said witnesses at the next term of the court was also made to appear, and it was, we think, the duty of the court, in the exercise of sound and reasonable discretion, to have sustained the motion and continued the cause until the next term thereof. *Austine* v. *People,* 110 Ill. 248; *Shirwin* v. *People,* 69 id. 85; *Sutton* v. *People,* 119, id. 250.

Evidence that the deceased armed himself with a deadly weapon, and publicly made threat of a determination to take the life of the defendant, coupled with the evidence of other witnesses that the deceased sought the defendant at his place of business, and there first assaulted him with brick-bats, and then drew a revolver and fired a shot at the defendant, before the defendant resorted to any defense, was of vital importance, and the defendant had the right, at the first term after the term at which he was indicted, if he had used due and proper diligence to procure the testimony, to have the witnesses who would testify thereto, in attendance, and if they could not then be procured, if it appeared that their attendance could be secured at the succeeding term, the due and proper administration of the law required the cause should be continued.

The objection that the evidence of the absent witnesses would have been merely cumulative, can have no force in a case where it is shown there is irreconcilable conflict in the testimony. The greater number of witnesses testifying, on the one side or the other, may, and often does, prove decisive of the case. But in addition to this, the affidavit shows that the defendant can not so well and clearly prove the facts set forth by any other witness. The law requires greater diligence in the endeavor to procure the attendance of absent witnesses on a second application for a continuance. It is difficult to see how greater diligence could have been exercised in that respect than is here shown. The messenger sent to Missouri procured the attendance of Glover as a witness, and there seems no doubt that Criswell's attendance would have been secured but for his unavoidable detention on account of the illness of his family. It is to be regretted that a judgment must be reversed for errors of this sort, but it can make no difference what the character of error is, if it be material to a fair and impartial trial of a citizen, under the law. As the cause will have to be submitted to another jury, we refrain from any discussion of the facts.

As before said, we think the court erred in refusing the defendant's motion for a continuance, and for that error the judgment will be reversed. If there be other errors in the record, they will probably be corrected on another trial, and no discussion of them here is necessary.

For the reason given, the judgment of the circuit court is reversed, and the cause remanded to the circuit court of Moultrie county for further proceedings.

*Judgment reversed.*

Mr. JUSTICE WILKIN took no part.