The opinion of the court was delivered by
Nicholls, O. J.
J. B. Vinet, public administrator, alleging that Pannie Seymour, widow of Wm. R. Mills, had died on the 6th of January, 1896, in the city of New Orleans, leaving no heir, present or represented in Louisiana, that her succession was vacant, applied for letters of administration.
On the 6th January, 1896, Peter S. Anderson and two others filed a petition in the District Court, in which they alleged that the said Pannie Seymour did, on August 7,1895, by act before Zengel, notary execute a will in the nuncupative form, in which they were appointed jointly as executors with seizin; that they accepted said trust and desired to qualify as such. That the succession has been opened by the public administrator, as a vacant estate, and he had applied for leters of administration. That the last will of the deceased should be filed, registed and ordered executed, and they should be appointed executors, and the prayer of the public administrator should be rejected.
The public administrator answered the rule. He admitted that the deceased had, by act before Zengel, executed what purported to be a will in nuncupative form, but he alleged that subsequent to the execution of said alleged will, the deceased executed on November 30, 1895, an express act of revocation of all wills and testaments, by act before Upton, notary public; that the status of the succession was thus fixed as an intestate succession and there existed no reason why respondent should not be appointed administrator. He prayed that the rule be discharged and that he be appointed administrator. He annexed to his answer a copy of the acB of revocation.
Plaintiffs in the rule filed whatis styled ian “ amended petition and opposition” in which they amplified their opposition to the application of the public administrator. They denied that the deceased had died intestate, and averred that she had left a last will (the will before Zengel, already mentioned), in which they had been appointed executors, and for which probate they had petitioned. They averred that the pretended act of revocation executed before Upton ■did not, and could not, revoke or recall the said testamentary dispo - *995 sitions of the deceased and was null and void and of no effect, for the following reasons, viz:
1. Said act was not made in one of the forms prescribed for testaments and clothed with the same formalities.
2. The witnesses did not have the legal qualifications.
8. The requisite number of witnesses for cases of blindness of the party, dictating the instrument, were not present; said Mrs. Mills being blind.
4. Erasures, and words added by the hands of another were not approved by said Mrs. Mills before signature, and said erasures and addition of words took place after signature outside of the presence of the party dictating the instrument.
5. The instrument was not written at one and the same time, without interruption or turning aside to other acts, but, on the contrary, one of the witnesses absented himself during the confession, after the beginning and prior to the signature of the same, and remained absent for a considerable time, which absence taints the instrument with nullity.
6. Said instrument is not a testament or act of last will, disposing of property mortis causa but a notarial act-, unknown to our system of laws, which can not validly revoke, annul and supercede the prior testamentary dispositions of testatrix.
V. The notarial act being invalid and illegal, the nuncupative testament of testatrix, under which the opponents claim remained in full force and effect, and should be upheld accordingly.
On January 20, 1896, the case came up for trial on the application of the public administrator to be appointed as administrator. The public administrator offered the act of 80th November, 1895, passed before Upton, notary. The court admitted it as rem ipsam. Oppo - nents offered in evidence the will of the deceased, passed on the 7th August, before Zengel, notary. Objection was made by the public administrator on the ground that it had been revoked by the subsequent act before Upton, notary. The court admitted the document as rem ipsam, stating it would pass upon the act of revocation after all the evidence was in; that after seeing the act of revocation it reserved its right to rule upon the absolute admissibility of the will offered.
Opponents having offered to prove by witnesses the allegation of their amended opposition, the public administrator objected to all *996 parole testimony, to vary of contradict the recitals of the notarial act of revocation, passed before Upton, notary, on the ground that the act was valid in form and made full proof of itself and fixed the status of the succession, and it could not be attacked collaterally. The court reserved its ruling until after hearing the testimony, and; several witnesses testified as to the circumstances connected with the passing of the act of revocation. At the close of the testimony the court rilled upon the objection to any testimony in the case which had been raised. It “ruled that the objection was well taken; that the necessary parties were not before the court to enable it to-pass a definitive judgment as to the validity vel non of the act of revocation or of the testament itself — the court was of the opinion that the judgment asked was in regard to the administration in thq first instance; that the primary administration or care of the succession would have to be based upon, the face of the records as-made, to-wit: the will and the act of revocation; that parole evidence could not be received at that junction of affairs on the issue-then before the court to assail the validity of the act of revocation;. that if there were in the act of revocation itself any defects, of •course, the parties would not be concluded from showing that on the-face of the papers.” To this ruling, opponents excepted and reserved a bill.
The court rendered judgment against the opponents and in favor of the public administrator, dismissing the opposition and appointing the public administrator administrator of the succession. It reserved to áll parties in interest the right to attack by direct action, either the testament of the deceased or the act of the revocation..
Opponents appealed.
In their brief, they say:
“ The District Judge having excluded all parole evidence going to-assail the validity of the notarial revocatory act before Upton, notary public, for non compliance on his part with legal formalities, the controversy narrows down to this legal proposition: ‘ Oan a testament be revoked in Louisiana by a pure notarial act which is not itself a will because not containing any disposition of property in favor of instituted heirs or legatees, though it be drawn Up with the apparent formalities of a nuncupative testament by public act.’ ”
Counsel say: “ This question is res nova in this State for it has not happened before (so far as we have seen), that a person who had. *997 made a testament ever called upon a notary to receive a declaration •of annulment thereof without making any other disposition of property. It is remarkable that the testatrix of August, who had made so many eccentric dispositions mortis causa, should in November following, dictate a notary public the simple declaration, ‘ I do hereby revoke all former wills heretofore made by me.’ If such an act which the notary himself styles an act annulling all wills and testaments ’ and which no one claims to be a will, is sufficient in Louisiana, as it certainly is in France, under the express provisions of Art. 1035 of the Code of Napoleon, to place the testatrix back in a position of hesitancy, then the public administrator rightly held that the ¡succession- was vacant and intestate. Opponents, on the contrary, are entitled to the probate of the will of August 7,1895, and to qualify as executors thereunder, if the said revocatory act is unknown to our system of laws, and can not validly revoke the prior testamentary dispositions of the deceased.” * * * Our legal proposición is:
“ 1. An act of last will can not be revoked expressly in Louisiana, ■except by a subsequent and different act of last will.
“2. A purely revocatory act which makes no disposition of propty, provides for no legatees, instituted heirs or testamentary executors, is not a testament or act of last will.
“3. Hence the'revocatory action is worthless, even though to all -outward appearances it be a will since it has neither the substance nor elements of a will.”
The only question submitted to us is, whether, in order that a testator should make an effective revocatiou of prior wills made by. him, it be necessary not only that he should formally declare, in writing, in an act in proper form, clothed with proper formalities, that he revoke all prior wills, but that in the act in which he makes ¡such formal declaration he should, by express affirmative declarations, dispose of his property, either universally or by universal title ■or by particular title.
The law of Louisiana on the subject of the revocation of wills lies ■ within very narrow compass. It is as follows:
Article 1690. “Testaments are revocable at the will of the testator until his decease. The testator can not renounce this right of ■revocation nor obligate himself to exercise it only under certain words and restrictions, and, if he does so, such declaration shall be ■considered not written.”
*998 Art. 1691. “ The revocation of testaments by the act of the testator is express or tacit, general or particular. It is express when the testator has formally declared, in writing, that he revoked his testament, or that he revokes such a legacy or a particular disposition.
“ It is tacit when it results from some other disposition of the testator, or from some act which supposes a change of will.
“ It is general when all the dispositions of a testament are revoked.
“Jt is particular when it falls on some of the dispositions only without touching the rest.”
Art. 1692. “The act by which a testamentary disposition is revoked must be made in one of the forms prescribed for testaments, and clothed with the same formalities.”
Opponent’s contention is substantially that in Louisiana the right of revocation of a will is not an absolute right, but one conditioned upon or made contingent upon the testator’s making a new will containing express affirmative new disposition of property; that the testator must not only expressly revoke, but expressly replace; that he must not only demolish, but he must actively reconstruct. We find nothing in Art. 1691, O. C., justifying that proposition. What is the declaration in the act of revocation which the law, in that article, requires to be made, in order to operate a revocation? There is no uncertainty on that point; it is simply “ a formal declaration by a testator that he revoked his testament,” that and nothing more. Were we to require more than this we would have to add to the law instead of taking it as it is.
The testator having, in a prior will or in prior wills, announced what, in the absence of subsequent counter declarations, would be taken to be his last wishes, he has the right up to death to formally announce that he has changed his mind, and to declare that the disposition of the prior testaments should no longer be taken as expressive of his will. As the prior testament was essential to be made in order to bring about in respect to the disposition of his property a departure from the disposition which the law itself would make, so the only rational method of bringing himself back into acquiescence with those legal dispositions, would simply be by undoing what he had done before. The moment this was done the law would, by its own force control the situation, there would be no necessity for *999 any expression of will on this subject. There would instantly be a restitutio in integrum.
Article 1692 does not require that the act of revocation should itself be a “ testament ” as opponents argue — it only requires that it should be “an act ” in “ one of the forms prescribed for testaments and clothed with the same formalities.”
There are in this State different forms or classes of wills. There are nuncupative or open testaments, mystic or sealed instruments and olographic testaments,, and nuncupative testaments, are subdivided into nuncupative testaments by public act, and nuncupativetestaments by private act. Bach form of testament is subjected by law to the observance of certain specified formalities or “solemnities.” Whenever an act is presented as an act of revocation of a will, all that is necessary in order that it should hold good, is that the act in which the required formal declaration of revocation is found, shall on examination, prove to be in one of the forms provided for testaments and clothed with the same formalities.
Opponents say that such a construction would be unreasonable. They ask why should the Legislature have ordained that the revocatory act should have the shadow and not the substance of a will? Why depart from the rather too liberal dispositions of Art. 184 of the Code of 1808, as well as from the amendments proposed by the commissioners appointed under the Act of 1822 to revise that code, and from Art. 1035 of the Code Napoleon? Was it not because we wanted to return to first principles, since under the Roman law a “testament” could only be revoked by another “testament?” Would not such construction, they say, be liable to the criticism of tautology. Bor is not saying that the words “ the act must be made in-one of the forms prescribed for testaments” refer only to the general appearance of the instrument and not to its very substance, equivalent to saying “that it must be clothed with the same-formalities?” Why should the two sentences be placed in juxtaposition if they both contemplate the same object? Is it not evident that the words “ must be made in one of the forms ” have a meaning quite distinct from the words “ clothed with the same formalities?” And since the latter deals with the outward appearance of things the former necessarily have a deeper significance.
Article 184 of the Code of 1808 provided that: “In revoking a testamentary disposition less solemnity is required than in making *1000 it. Thus a testament may be revoked by another testament, or by a ■codicil or by any other act received by a notary in presence of two witnesses expressing a declaration of a change of will. In like manner a codicil may be revoked by a new codicil, or by a testament or by an act passed as above specified.”
When the Code of 1808 was revised, the Code Napoleon was in ■existence, and the law bearing upon the subject of the revocation of wills was embodied in Art. 1035 of that Code, and it read as follows:
“Les testaments ne pourront étre révoqués en tout ou en partie ■que par un testament postérieúr ou par un acte devant notaires portant déclaration du changement de volonté.”
In dealing with the subject of the revocation of wills in the revision of the Code of 1880, through the adoption of that of 1825, our lawmakers did not, in Art. 1685 of the Civil Code (now Art. 1692) think proper to follow the language of Art. 1035 of'the Code Napoleon. The phraseology of the French.article had enabled some strict •constructionists in France to insist that inasmuch as by it it was declared that “testaments can be revoked in whole or in part •only by a subsequent testament or by an act before a notary public ■declaratory of a change of will,” and inasmuch as by law the word “ testament ” had been given a fixed definition declaring it (Art. 895 ■O. N.) “an act by which a testator disposes for a time when he shall no longer exist, of the whole or of part of his property, and which •he can revoke,” therefore it was necessary, in order to bring about ■a revohation when attempted, in any other manner than by an act before notary, that the act of revocation should, at the same time, be one making a disposition of his property, either partially or •entirely.
We scarcely think that the framers of the French law intended, ■under Art. 1035 of the Code Napoleon, to make the revocation of a will by a testator dependent upon a new affirmative disposition of his property or to impose limitations upon the power it itself of revocation. Had this been their intention we would have found the same obligation repeated in that portion of the article allowing a revocation through an act before notaries. We find no such ■obligation imposed upon the testator, when, in that form, he revokes his former will. All that is required of him under such circumstances is to make a formal declaration of a change of will (changement de volente), and not a declaration of a new disposition *1001 of the property (disposition de ses biens). The necessity for “a new disposition of property” thus insisted upon in France when the act of revocation was sought to be made through an act under private signature, rests exclusively upon a supposed obligation of blindly following the very letter of the law as to form. Our own Legislature doubtless saw to what result the injudicious use of the word “testament” had led up, and, in our opinion it left that word out precisely to avoid a similar contention being made here. We not only departed from the French article in the change just referred to, but we did so also in respect to the requirements of the “notarial act” when one was to be resorted to as furnishing the evidence of a change of will. Under the Oode Napoleon this act is referred to simply as “un acte devant notaires,” while with us the act must not only be an act before a notary, but it must be in the form prescribed for testaments and clothed with the same formalities.
The dominant idea with us is obviously that as by law the original testamentary dispositions of a person have, in order to be given effect to to find expression and be evidenced in a fixed designated way so a change of will in respect to those dispositions has to find expression and be evidenced in like solemn manner, but on the other hand that to this change of will (changement de volonté) u 1 force and effect has to be given when so evidenced.
Our law makers have manifested no desire te give a preference to testamentary successions over legal successions. On the contrary, the disposition of property at death, as fixed by the law itself, was deliberately adopted as the system most consistent with justice and equity, and that system is only departed from by strict adherence to well defined rules. There is no reason, therefore, leading us to suppose that the law maker has attached, as a condition to the revocation of an existing will that the testator revoking the will should be forced to affirmatively make a new disposition of his property. Opponents look upon the words “form” and “formalities” as synonymous, but in this there is error.
If a person on being told that another who had just died had left a will, should ask in what form this will was, the answer would, at once, be either that it was an olographic will, a nuncupative will by public act — a nuncupative will by private act of a mystic will — if he were to then ask whether all the formalities required by law in the premises had been fulfilled, the person to whom this question was *1002 addressed would instantly know and recognize that this was not a repetition of the first, but an entirely new and distinct question, calling either for an affirmative answer or for the specifying of some particular act or acts, which had either been omitted by the testator, the witnesses, or the notary, or all of them, or had been illegally and improperly performed.
We have not been called on to examine the act of revocation which is relied on in this case, with respect to its form or as to its being open to attack through-extrinsic evidence.
We understand it to be conceded that the act (leaving aside the question of its not containing affirmative declarations as to the disposal of the testator’s property) conforms as to form with the legal requirements for a nuncupative will by public act, and that it is on its face, clothed with the formalities required for such a testament. We understand it to be conceded that the District Court was justified in making the rulings it did, unless it was wrong in overruling appellants in the position taken by them before it and before this court, that by reason the absence of new direct affirmative disposal of her property by the testator, Fannie Seymour, in the act of revocation passed before Upton, notary, withdrew the act (on its face) from being taken as an act of revocation, thus leaving the original will in full force and effect. We think the District Court took a correct view of that particular question. The effect of our so holding is that the judgment appealed from must be affirmed.
The judgment appealed from being, in our opinion, correct, it is hereby affirmed.