STATE OF IOWA v. J. C. HASTY, Appellant.

**Adultry:** DEFINITION. A married man having sexual intercourse
1 with an unmarried woman is guilty of adultery both at common law and under Code section 4932.

**Indictment:** NAMES AND TESTIMONY OF WITNESSES. The minutes of testimony taken by agreement on a preliminary examination, which are submitted to the grand jury, must be returned with an indictment and the names of the witnesses giving the same endorsed thereon, or the indictment, on motion, will be set aside, under Code section 5276 *et seq.*, provided there is a showing that such testimony is material.

**Continuance:** ABSENT WITNESSES: CUMULATIVE EVIDENCE. Ordin-
3 arily a continuance, in a criminal case, will not be granted on account of absent witnesses, where it appears that the testimony sought is merely cumulative, but where the direct evidence on the question at issue is in conflict and might be de-

| 121 | 507 |
| 122 | 155 |
| 121 | 507 |
| 128 | 194 |

| 121 | 507 |
| f142 | 604 |

| 121 | 507 |
| 143 | 231 |
| 144 | 259 |

termined by the number of witnesses, or where the defense relies upon breaking down the credibility of the state's witnesses, a fair trial may require a continuance although the evidence sought is cumulative.

Adultery: ELECTION OF ACT RELIED ON. On a prosecution for adultery, where the evidence discloses but one adulterous act, no further election as to the act relied upon, is required by the state.

Notice of Additional Testimony: SERVICE ON ATTORNEY. When, after diligent search, the defendant cannot be found, notice that the state will produce on the trial, witnesses who were examined before the committing magistrate but whose testimony was not returned with the indictment, may be served on his attorneys.

Evidence: ADMISSION OF PHOTOGRAPH. In a prosecution for adultery, a photograph of defendant's alleged paramour is admissible to identify her as the woman with whom defendant lived in another state, though taken several years before the trial.

Evidence: LETTERS. Where letters are offered in evidence, which are in part competent, but contain as well, statements of opinion by the writer, an objection to the entire letter should be overruled.

Evidence: LOCUS DELECTI. Where it was shown that the defendant's paramour gave birth to a child outside of the county in which he was prosecuted, an instruction that such fact might be considered by the jury, in view of the other evidence in the case in determining whether the crime charged was committed within the county, was not error.

Misconduct of Prosecuting Attorney. A prosecuting attorney may, in argument, call the jury's attention to the fact that certain evidence is uncontradicted, although the accused is the only party who could contradict the same, and not be within the prohibition of the statute.

Same. The expression of opinion, merely, by a prosecuting attorney in argument, as to what a witness would have the right to do in the future, which does not pertain to the result of the trial, is not such misconduct as will justify a reversal.

Misconduct of Juror. Evidence considered and held to show no misconduct on the part of a juror.

*Appeal from Keokuk District Court.*—HON. A. R. DEWEY, Judge.

FRIDAY, OCTOBER 23, 1903.

THE defendant was convicted of having committed adultery, and appeals.—*Affirmed.*

*Brown & Brown, Stockman & Hamilton* and *B. W. Preston* for appellant.

*Chas. W. Mullan*, Attorney General, and *Chas. A. Van Vleck*, Assistant Attorney General, for the State.

LADD, J.—The victim of defendant's lust was an unmarried woman, and counsel's first contention is that owing to this fact he was not guilty of the crime of adultery.

I. ADULTERY: definition.     The statute, as it stood in Code 1873, read: "Every person who commits the crime of adultery, shall be punished by imprisonment in the penitentiary not more than three years, or by fine not exceeding $300 and imprisonment in the county jail not exceeding one year; and when the crime is committed between parties only one of whom is married, both are guilty of adultery and shall be punished accordingly. No prosecution for adultery can be commenced but on the complaint of the husband or wife." Section 4008, Code 1873. The words "both are guilty of adultery and" were omitted from the Code of 1897. Adultery at the common law was not denounced as a crime. As the basis of a civil right of action it consisted only of a man having sexual intercourse with a married woman other than his wife, thereby introducing the danger of spurious issue of the marriage. Connection with a single woman, though fornication, was not adultery. The same rule seems to have obtained under the Roman law, but was radically modified by the ecclesiastical courts, which denounced the offense as the sexual violation of the marriage relation, regardless of whether the offender was male or female. And the definition of the canonial law, according to Wharton, was accepted by every Christian state at the time of the

colonization of America, and "is no doubt a part of the common law brought with them by the colonists of all Christian nationalities." 2 Wharton on Crim. Law, section 1719. It has been generally so defined in statutes authorizing divorce because of adultery. 1 Bishop on Marriage and Divorce, section 703. *Picket v. Picket*, 27 Minn. 299 (7 N. W. Rep. 144); *Commonwealth v. Call*, 21 Pick. 509 (32 Am. Dec. 284); *Mosser v. Mosser*, 29 Ala. 313. The decree is granted owing to the fault of the offending party in the violation of the marriage contract, and sexual intercourse by a husband with an unmarried woman is quite as much a violation of the contract and the marital rights of the wife as it would be if committed with a married woman. See *Aitchison v. Aitchison*, 99 Iowa, 94. It is also to be observed that the word "adultery" in its ordinary use has precisely the meaning accorded to it by the ecclesiastical courts. The statutory offense is regarded as primarily against the family, and only incidentally in its consequence to the public. *State v. Roth*, 17 Iowa, 336. It would seem necessarily to follow that the status of the *particeps criminis* in that view would be of no importance. Moreover, the statute as it formerly stood denounced the offense as it was defined by the canonical law. And the elimination of the words "both are guilty of adultery" ought not to be construed to change its meaning, for the clause "both shall be punished" is retained. For what punished? Manifestly the crime forming the subject of the section. The statute proceeds on the theory that adultery consists in the sexual connection between a man and a woman, of whom one is lawfully married to a third person, and directs punishment accordingly. Were it not for the requirement that both be punished when one is unmarried, the latter might escape under the last clause prohibiting prosecution save on complaint of the spouse.

II. It appears that the evidence of certain witnesses was by agreement taken down in shorthand, subsequently

·extended and filed by the committing magistrate with the papers in the clerk's office. This evidence was considered by the grand jury, and the indictment based in part thereon.    The names of ·such witnesses were not indorsed on the back of the indictment, nor were minutes of their evidence attached thereto.    On these grounds defendant moved that the indictment be set aside.    Section 5276 of the Code re- ·quires that upon the finding of an indictment "the names of all witnesses on whose evidence it is found must be indorsed thereon before it is presented to the court, and must be, with the minutes of the evidence of such wit- nesses, presented to the court."    Unless this is done, or proper notice given, such witnesses may not be called, as ·section 5373 of the Code prohibits the county attorney from introducing "any witness who was not examined be- fore a committing magistrate or the grand jury, and the minutes of whose testimony were not presented with the indictment," without the service of the notice prescribed. These sections contemplate the indorsement on the back ·of the indictment of the names of all witnesses upon whose testimony the finding of the grand jury is based.    No dis- tinction whatever is drawn between those actually before the grand jury and those the minutes of whose testimony ·only is examined.    The motion to set aside the indictment is to be sustained "when the names of all the witnesses examined before the grand jury are not endorsed thereon; when the minutes of the evidence of the witnesses exam- ined before the grand-jury are not returned therein." Were the witnesses the minutes of whose testimony only were before the grand jury "examined" within the mean- ing of the statute?    We think so.    The grand jury neces- sarily passed upon their credibility as though present.    In this sense they were examined by that body.    The inten- tion of the lawmakers, as gathered from the several sec- tions of the Code from which we have quoted, seems to

<span style="margin note">2. INDICTMENT: names and testimony of witnesses.</span>

have been that the names of the witnesses upon whose testimony the indictment is based, and the nature of their evidence, should be made known to the accused in advance of the trial. This is obvious from the provision of the next section, that the motion to set aside shall not be sustained if the indorsement of names is corrected and the omitted minutes of evidence are attached under the supervision of the court. Section 5320, Code. Of course, it must appear that the evidence given was material, and the state rightly insists that there was no showing of the materiality of the evidence of the witnesses whose names did not appear on the back of the indictment. This was essential. *State v. Little*, 42 Iowa, 52; *State v. Lewis*, 96 Iowa, 291. The defendant cannot complain of the omission of evidence having no bearing on the trial against him, or of the names of those giving such evidence, from the indictment; and, before the motion to set aside will be sustained, the materiality of the evidence given by the witnesses whose names have been omitted must affirmatively appear.

III. The minutes of the evidence attached to the indictment indicated that Mrs. Hasty would testify to having seen defendant engaged in sexual intercourse with

5. Continuance absent witnesses; cumulative evidence.

Olive White in a barn on his farm within the time fixed by the statute of limitations. She did in fact so testify on the trial, and hers was the only direct testimony of the commission of the offense. A motion for continuance on the ground of the absence of witnesses who would testify that on several occasions she had stated out of court, in substance, "that she could not swear she had seen them [defendant and Olive] do anything wrong, but she saw a transaction in the barn that looked suspicious," was overruled. The affidavit shows affirmatively due diligence as to three of the witnesses, and that they would likely recover from sickness in time to attend the next term of court. Proof

of the sickness of John Bowen did not establish the inability of Mrs. Bowen to attend the trial as a witness, as, for all that appears, another might have cared for him during her absence. The above statement is said to have been first made in presence of these persons and Mr. and Mrs. Ollis, the last of whom, as well as Bowen, were unable to be present at the trial. But it affirmatively appeared that Mrs. Bowen and Ollis were competent witnesses to the statement, and the latter did in fact testify fully thereto. The motion also indicated that at another time substantially the same statement was made in presence of Mr. and Mrs. King, and that the latter would be unable to be present at the trial. But King testified thereto as asserted his wife would. It thus appears that the proposed evidence was both cumulative and impeaching in character, and the motion so indicated. That the evidence of witnesses because of whose absence a continuance is asked would be merely cumulative is generally regarded as a valid objection to the application. *People v. Jenkins*, 56 Cal. 4; *Clement v. Newton*, 78 Ill. 427; *Wilkerson v. Commonwealth*, 88 Ky. 29, (9 S. W. Rep. 836); *State v. Rodrigues*, 45 La. Ann. 1040, (13 South. Rep. 802); *Dillingham v. Ellis*, 86 Tex. 447, (25 S. W. Rep. 618); *Corbin v. People*, 131 Ill. 615 (23 N. E. Rep. 613). This is the ground of the statutory requirement that the affidavit must set forth that affiant knows of no other witness by whom the alleged facts may be fully proven. But notwithstanding that the evidence to procure which a continuance is sought may be cumulative, it may happen that the interests of justice, which are made by the statute of controlling importance, will be promoted by a postponement for its production. Thus, when the direct evidence of a transaction under investigation is in conflict, the issue is often determined by the number of witnesses, and in such a case the objection that the evidence is cumulative probably ought,

not to prevail. *Dillingham v. Ellis, supra; Corbin v. People, supra.* In the last case the court said: "The objection that the evidence of the absent witnesses would have been merely cumulative can have no force in a case where it is shown there is irreconcilable conflict in the testimony. The greater number of witnesses testifying on the one side or the other may, and often does, prove decisive of the case." But merely impeaching testimony does not bear directly upon a controverted issue raised in the trial. It is limited to discrediting some witness who may have testified upon such an issue.

Moreover, the ruling of the court on application for continuance to enable a party to procure impeaching evidence is generally regarded as purely discretionary (*State v. Rorabacher*, 19 Iowa, 154), and will ordinarily be denied when proof of good or bad character only is proposed *State v. Johnson*, 47 La. Ann. 1225, (17 South. Rep. 789); *Hamilton v. State*, 3 Ind. 552; *Smith v. State*, 58 Miss. 867; *Murphy v. State*, 6 Ind. 490. Appellate courts have seldom interfered when the impeachment proposed is by evidence of contradictory statements. In *Lundy v. State* 44 Miss. 669, the affidavit recited that the absent witness would testify that a witness called by the state had said out of court that if he could not convict the accused by telling the truth he would do it otherwise. In *State v. Spillman*, 43 La. Ann. 1001 (10 South. Rep. 198) it was proposed to prove that the prosecuting witness had said he was mad when he began the suit, that he would compromise the suit for $15, and not appear to prosecute. In *State v. Howell*, 117 Mo. 307, 339 (23 S. W. Rep.. 263), the absent witness would have testified that one called by the state, who identified accused near the place of the crime, had stated out of court that he did not know anything about the case, and was unable to say whether the person seen was the accused. In each of these cases the denial of the application for continuance was approved.

On the contrary, it was declared error in *Fox v. State*, 9 Ga. 373, to overrule an application for continuance based on the absence of a witness who would testify that a witness upon whose evidence the state relied for conviction had said "that, if hard swearing would send 'the defendant to the penitentiary, he should go." In none of these authorities, however, was other evidence of the same statements offered on the trial, as in the instant case. But the defense may sometimes rely solely upon breaking down the credibility of the state's witnesses, and in such a case the presence of a witness to contradictory statements, cumulative in character, might be essential to a fair trial. No such showing, however, was made in the case at bar by the affidavits filed. The testimony of Mrs. Hasty was strongly corroborated by evidence of other transactions throwing suspicion upon the conduct of the parties, and the record leaves no reasonable doubt of defendant's guilt of the offense charged. While we should have been quite as well satisfied had the trial been postponed, yet, in view of all the circumstances adverted to, we are not inclined to say that there was such abuse of discretion as to justify interference on our part.

IV. Mrs. Hasty testified to having seen defendant and Olive White having sexual intercourse in the barn at a time within the period of the statute of limitations. **4. ADULTERY: election of act relied on.** Aside from this, there was no direct evidence of intercourse at any particular time. In this state of the record we do not think it was error not to have required the state to elect the transaction it would rely upon. It is not as though several acts had been proven, on any one of which the defendant may have been found guilty. The particular offense was designated by the evidence, and all the other testimony was received in corroboration. Suppose, however, the testimony of Mrs. Hasty be eliminated, must there still have been an election? We think not; for, though the evidence leaves

little doubt as to the adulterous relation, it fixes no time. It is as though a man and woman were shown to have roomed together and occupied the same bed for six months. This would afford ample proof of intercourse, but no one would pretend to say the specific date must be shown, or that the state must fix it by election. In his case the evidence pointed out the transaction, and no additional election was required.

V. Notice that witnesses who testified before the committing magistrate would be called was served on the attorney of defendant, the officer's return reciting that the

5. NOTICE of additional testimony: service on attorney.

latter was not found within the county. The notice was essential under section 5373, as amended by Acts Twenty-Eighth General Assembly, chapter 135, because of minutes of the witnesses testimony not hving been returned with the indictment. To authorize service on the attorney, instead of the accused, it is not essential that the latter should have gone beyond the boundaries of the county. It is sufficient that the officer, after diligent search, failed to find him.

VI. The evidence tended to show that defendant and Olive White went to Oklahoma Territory, where he took a homestead, and that they lived in a sodhouse as husband and wife for about six months. A child was born to her in April, 1901, which he subsequently named Virgil St. Clair Hasty. She died about six months thereafter, and over her grave he caused a tombstone to be erected, inscribed with these words: "Olive, wife of James C. Hasty, died September 1, 1901, age 21 years and 29 days." It is objected that defendant is not shown to have caused this inscription to be placed on the stone. We think this fairly to be inferred, in view of his relations with deceased, from Hilliker's testimony that defendant told him a tombstone was to be erected to her memory and that he should pay for it out of the proceeds of defendant's property. He had attended to her burial, and the board, with

"Hasty" written on it, was at the grave before his departure.   The rulings by which the evidence was received were correct.

VII.   A photograph was proven to be that of Olive White several years previous to her death.   It was properly received in evidence as tending to identify her as the

**6. EVIDENCE: admission of photograph.** female with whom defendant lived in Oklahoma.   That it was taken several years before the trial furnished no ground for its rejection as evidence, though she was then much younger.

VIII.   The father of Olive White testified to having two letters written from Oklahoma, and that, after asking defendant whether he was going to do anything about the

**7. EVIDENCE: letters.** injury to his family, he commenced to read them.   Thereupon defendant stopped him until his daughter left the room.   They were then read, when the defendant said:   "I see you know it all; I told Olive we would be found out."   He then added "it was not true that they had lived in a dugout," as stated in one of the letters, and that the child was not as old as said, and he told of the expense he had been at in trying to care for and save her life.   These letters were received in evidence over defendant's objection.   They recite that defendant and Olive White passed in Oklahoma as husband and wife; had a child, which was adopted by one Simpson after her death; that they lived in a sodhouse; that during her sickness she wished her people to be notified, but he refused, for which he was much blamed; that he gave her a suitable burial; that there was much talk because of her youth and friendless condition; and one of the letters ventures the opinion that he should be prosecuted.   It will thus be seen that defendant, by what he said, admitted the contents of these letters, save in the respects pointed out.   The only exception taken to them is that they contained expressions of opinion which could not have been introduced had the writer been called as a

witness. But they purported to state material facts, and such portions were admissible in connection with his statements. The objection was directed to the entire letter, and not the mere expressions of opinion contained therein. It was rightly overruled.

IX. In the fifth instruction the jury was told that, if Olive White became pregnant and gave birth to a child outside of Keokuk county, that fact might be considered

8. EVIDENCE: in determining whether adulterous relations
locus delecti. had occurred in the county within the statutory period. The evidence tended to show that defendant recognized the child as his own, gave it his name, and executed articles of adoption of it to one Simpson. Mrs. Hasty testified to seeing him in *flagrante delicto* with Olive White in July, 1900, in Keokuk county, about nine months—the period of gestation—previous, and he did not leave that county until October following. Manifestly, the birth of the child and the admission of parentage by defendant tended to show that Olive conceived it from him nine months previous, and, as both were then in Keokuk county and several months after that, that the crime must have been committed there. Hence proof of their relations indicated something more than mere disposition to do wrong, and the criticism of the eighth instruction for not so limiting it is not well founded.

X. The defendant did not go on the stand as a witness, and he insists that one of the attorneys assisting the county attorney, in his arguments to the jury, alluded to

9. MISCONDUCT the fact, in violation of section 5484 of the
of prosecut-
ing attorney. Code. According to the affidavits filed, he stated, "There has been no witness on the stand contradicting the very material evidence of Mrs. Hasty, and no witness has been on the stand as to the cow barn transaction." It is argued that as but three persons were present and Olive White was dead, but one witness, the defendant, could have contra licted her testimony of seeing them

engaged in sexual intercourse, and hence that the statement must be construed to allude to his failure to testify. The trouble with this is that an argument is necessary to show the connection. In *State v. Baldoser*, 88 Iowa, 55, the reference was direct. But the state has the right to call the jury's attention to the fact that certain evidence is uncontradicted, even though the accused may be the only person who might have contradicted it. *State v. Snider*, 119 Iowa, 15; *State v. Seely*, 92 Iowa, 488; *State v. Kidd*, 89 Iowa, 54, 66. The statement to which exception is taken amounted to no more than an assertion that Mrs. Hasty's evidence was uncontradicted by any witness, and, under the authorities cited, cannot be held to be within the prohibition of the statute. See, *contra, Dawson v. State*, (Tex. Cr. App.) 24 S. W. Rep. 414. Whether the county attorney made similar statements is in dispute, and as to these we accept the finding of the district court. *State v. Maynes*, 61 Iowa, 119.

Most of the criticism of the argument of another attorney assisting the county attorney at the trial is answered in *State v. Burns*, 119 Iowa, 663. If the crime was bitterly condemned, it may be said the undisputed facts justified strong language. If other offenses were alluded to, it was in response to argument of counsel for defendant. They had taunted the state for not prosecuting him for other crimes and delaying this prosecution until twenty days of the period of limitation. The response was that it was true that he had taken the girl into his home and seduced her, that the jury would not require five minutes to convict him of rape, and that punishment for the offense charged was all that was possible now. The rejoiner was justifiable. But the attorney went farther and declared that, "while I would not advise taking human life, Lemuel White would be justified in taking the life of defendant." This is but the expression of the attorney's opinion of what White would have the

right to do in the future, not of what he ought to have done or should do. In this respect, and others, the language differs from that condemned in *State v. Proctor*, 86 Iowa, 698. On such occasions hyperbolical expressions have been indulged in always, and probably always will be, and when mere deductions from the evidence and relating to a future course of conduct, not pertaining to the result of the trial, as in the instant case, they cannot ordinarily be regarded as prejudicial. It would be undertaking too much to vindicate all expressions of opinion made in the heat of argument, and this is not essential in order to sustain a conviction. If not calculated to unduly arouse the passions or to divert the jury from the proper discharge of their duty, the verdict should not be disturbed. We are not to be understood as approving the language employed. It was unsound in law. It was opposed to modern notions of good morals. Its tendency was to encourage avenging wrongs by means other than through the orderly administration of justice. And yet it was the mere suggestion of what a witness might be justified in doing in the future, and ought not to be held to have improperly influenced men of ordinary intelligence, as the jurors are presumed to have been, in the proper discharge of their duties in the present. They were not concerned with what the father of the girl might do thereafter, but with what the defendant had done in the past.

XI. A woman asked a juror, pending the trial, whether he knew he was related to Mrs. Hasty, and then said they were fourth or fifth cousins. He responded that that would make no difference. It appears that he had never seen the woman and had never seen Mrs. Hasty prior to the trial, and that if they were related neither of them knew the fact. There was no misconduct save on the part of the busybody who interfered. See *State v. Baughman*, 111 Iowa, 71.

The exception taken to the seventh instruction is dis-
·posed of by *State v. Briggs*, 68 Iowa, 416. See, also, *State
·v. More*, 115 Iowa, 178. Instructions refused, in so far as
·correct, were included in those given. The suggestion
that Mrs. Hasty's evidence ought to be construed so as to
fix the time of the crime in 1899 instead of 1900 is without
foundation.—AFFIRMED.