LILLIAN SHOVER, appellee, v. IOWA LUTHERAN HOSPITAL, appellant.

## No. 50106.

(Reported in 107 N.W.2d 85)

708

JANUARY 11, 1961.

REHEARING DENIED MARCH 7, 1961.

John Paul Jones and W. C. Hoffmann, both of Des Moines, for appellant.

Charles J. Cardamon and Lex Hawkins, both of Des Moines, for appellee.

GARFIELD, J.—About 12:30 a.m. on April 29, 1956, plaintiff, then a bed patient in defendant-hospital, fell to the floor in a hallway between a rest room and the room occupied by her. She was unattended by a nurse or other aide when she fell. She alleges she was seriously injured about her back and legs, necessitating two operations for a herniated intervertebral disc and a cordotomy. Also that the fall was caused by defendant's negligence in not following the directions of the attending physician for confinement of plaintiff to bed and in permitting her, unattended, to leave her bed and walk to and from the rest room. Trial resulted in judgment on jury verdict for plaintiff of $74,051 from which defendant has appealed.

Plaintiff entered defendant-hospital as a patient on April 24, 1956, for nervous and bladder trouble. Her doctor told one of defendant's nurses she was to stay in bed but he could not say whether he so informed plaintiff. Plaintiff testified neither her doctor nor any hospital employee ever told her she could not get out of bed. The day she was admitted to the hospital a catheter was inserted in her and remained so inserted until April 28, between 10 a.m. and 1 p.m., when it was removed. From the time of her admission different sedatives were administered to plaintiff. She was also given shots of paraldehyde,

a powerful hypnotic drug, commencing about noon on April 27. This drug was injected at 1 and 10 a.m. and 6:45 and 10:35 p.m. on April 28. These shots left plaintiff "groggy." Paraldehyde is apt to produce a dizziness and faintness.

At 11:30 p.m. on April 28 plaintiff urinated in a bedpan. According to Marilyn Reese and Shirley Rexroat, nurses who then attended her, plaintiff asked if she could get up to go to the bathroom but was told to stay in bed and a bedpan would be given her. Plaintiff said she did not remember such a conversation and, as stated, denied she was refused permission to go to the bathroom. According to plaintiff she awoke about 12:30 that night with a "bad" urge to urinate and thought she would feel better if she went to the bathroom.

Plaintiff testified she signaled for a nurse with the light above her door and nurse's aide Fern Pontius came to her room, plaintiff asked if she could go to the bathroom, the aide said she would find out, left the room, returned, granted plaintiff's request, handed her her slippers and housecoat and soon left, plaintiff went to the bathroom unattended, in returning to her room she suddenly became dizzy, fell full length on her right side, twisting her back and striking her head, hip and leg. Nurses Reese and Rexroat soon got there, helped her to her feet and bed. Miss Reese, from the nurses' desk in the hall, saw plaintiff fall and said she slumped slowly to the floor "like you would if you were heavily sedated."

Fern Pontius denied she attended plaintiff shortly before her fall or gave her permission to use the bathroom. There is substantial evidence the hospital record for the night in question was altered by an employee of defendant, probably Marilyn Reese, to show plaintiff went to the rest room without permission when it originally stated she went with permission.

This is a sufficient indication of the evidence at this point. Other facts will be mentioned later.

I. Defendant first contends it was entitled to a directed verdict upon two grounds. The first is alleged lack of competent evidence of the standard of care required of defendant. Upon this phase of the appeal of course we must view the evidence in the light most favorable to plaintiff.

The trial court instructed the jury it was defendant's duty to give plaintiff such reasonable care and attention as it knew, or in the exercise of reasonable care should have known, her condition required. This duty is measured by the degree of care, skill and diligence customarily exercised by hospitals generally in the community. Also that defendant was not an insurer of plaintiff's safety and was not required to guard against that which a reasonable person under the circumstances would not anticipate.

Since no objection was taken to this instruction it stands as the law of the case. Mallinger v. Brussow, 252 Iowa 54, 61, 105 N.W.2d 626, 630, and citation. In any event defendant asserts the instruction is correct. It is evidently patterned after 41 C. J. S., Hospitals, section 8c(3), pages 349–50, which defendant cites.

We think there is substantial evidence of this standard of care required of defendant and it was not entitled to a directed verdict on the ground of lack thereof. Its night supervisor testified it was the customary practice at the time and place in question not to let patients go to the rest room if the doctor's orders were to the contrary. As stated, there is testimony plaintiff's doctor gave defendant orders she was to stay in bed. Such directions would seem specially applicable to times when frequent shots of a powerful hypnotic drug were given and plaintiff had not left her bed for about four and a half days. While it is not conclusive, evidence of what is usual and customary is generally admissible on the issue of negligence. Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 385, 101 N.W.2d 167, 173, and citations. The cited decision fully supports our conclusion.

II. Defendant argues it was also entitled to a directed verdict on the ground of lack of evidence that plaintiff's condition was causally related to her fall. Dr. Charles G. Hughs, an osteopathic physician who treated plaintiff commencing June 4, 1956, testified, in answer to a hypothetical question, there was such causal relationship. He first answered he had an opinion on the matter. There is also medical testimony from a qualified expert that such a fall could cause a herniated inter-

vertebral disc. And plaintiff testified she had no previous serious injury to her back and none between the time of her fall and her seeing Doctor Hughs. Defendant's principal argument on this point is that Doctor Hughs was not shown qualified to express the opinion he did because of his claimed lack of familiarity with injuries like the alleged injury here.

It is doubtful defendant made timely objection upon the trial to Doctor Hughs' testimony on the ground now urged. Although the objection did assert there was no proper foundation for the witness to answer the question, this seems not to have been based upon his lack of qualifications. Further, Doctor Hughs, although directed by plaintiff's counsel to answer "yes" or "no" to the question whether he had an opinion regarding causal connection, said "Yes I think there would be a causal relationship in my opinion." Plaintiff's counsel again called for a "yes" or "no" answer and again the witness said "yes." Not until he was asked "What is that opinion?" was the objection above referred to interposed by defendant.

In any event we think Doctor Hughs was sufficiently qualified to express the opinion he said he had. What defendant's argument amounts to is that only a doctor who is a specialist in treating injuries to the spine is qualified to express such an opinion. It is not required that a physician be a specialist in the particular field in order to express such an opinion. Ward v. Sears, 247 Iowa 1231, 1239, 78 N.W.2d 545, 549, and citations; Eggermont v. Central Surety & Insurance Corp., 238 Iowa 28, 32, 24 N.W.2d 809, 810, 811. See also Lowman v. Kuecker, 246 Iowa 1227, 71 N.W.2d 586, 52 A. L. R.2d 1380; 20 Am. Jur., Evidence, section 865.

An annotation, 54 A. L. R. 860, 861, states: "* * * by the great weight of authority, a physician or surgeon is not incompetent to testify, as an expert, merely because he is not a specialist in the particular branch of his profession involved in the case; although this fact may be considered as affecting the weight of his testimony."

Section 150.4, Code, 1958, requires every applicant for a license to practice osteopathy to be a graduate of an approved college of osteopathy. Section 150.6 provides the subjects which

must be studied at such colleges. They include anatomy, diagnosis, surgery (including orthopedic), and neurology. Since Doctor Hughs was duly licensed he was evidently a graduate of such a college. He testified that when he advised plaintiff to see Dr. John T. Bakody, a neurosurgeon, on August 8 he suspicioned she had a disc herniation. According to Doctor Bakody, this proved to be correct. The fact Doctor Hughs referred plaintiff to Doctor Bakody for examination and surgery does not mean the former was not qualified to express an opinion as to the causal connection between the fall and plaintiff's condition.

III. Paragraph 5 of plaintiff's petition alleges defendant's negligence was a proximate cause of plaintiff's fall and injury and plaintiff was free from any negligence contributing thereto. Paragraph 5 of defendant's answer denies these allegations "and further by way of affirmative defense alleges plaintiff was negligent in willfully failing and refusing to obey the instructions given by her physician and employees of the hospital to remain in bed and plaintiff's injury, if any, was proximately caused by her negligent failure in such respect and her willful disobedience thereto."

In stating the issues the instructions to the jury summarize these allegations of defendant's answer but are otherwise silent with respect thereto. Defendant assigns error in the court's failure to instruct upon this so-called affirmative defense. Many authorities are cited for the proposition that ordinarily the jury must be instructed upon an issue which is pleaded and supported by evidence. There can be no doubt this is the rule.

We think failure to instruct upon this so-called affirmative defense was not prejudicial to defendant. The jury was fully instructed plaintiff must prove by a preponderance of the evidence that defendant's negligence in one or both of the respects claimed by plaintiff was the proximate cause of the accident in question and plaintiff was not guilty of any negligence which contributed in any manner or degree directly thereto. Both this issue of proximate cause and plaintiff's freedom from contributory negligence were elaborated upon in separate instructions. Each of them places the burden of proof as to these issues upon plaintiff. Aside from the definition of proximate

cause and contributory negligence in language repeatedly approved by us (see Brewer v. Johnson, 247 Iowa 483, 486, 72 N.W.2d 556, 558, and citations), the jury was told three times plaintiff must prove by a preponderance of the evidence the proximate cause of the accident and any resulting damage was defendant's alleged negligence and four times that plaintiff was free from any negligence which contributed in any manner or degree directly to the accident.

If the court had instructed upon this so-called affirmative defense, as such, the burden to prove it by a preponderance of the evidence would properly be placed upon defendant and it would be required to prove that the negligence of plaintiff *in the respect alleged by it was the proximate cause of her fall,* not a mere contributing cause. On the question of burden of proof as to this "affirmative defense" see Johnson v. McVicker, 216 Iowa 654, 658, 247 N.W. 488, and citations; Reddick v. Grand Union Tea Co., 230 Iowa 108, 115, 296 N.W. 800, 803; Maland v. Tesdall, 232 Iowa 959, 963, 5 N.W.2d 327, 329; Frideres v. Lowden, 235 Iowa 640, 641, 642, 17 N.W.2d 396, 397; Young v. Marlas, 243 Iowa 367, 376, 51 N.W.2d 443, 448; 65 C. J. S., Negligence, section 207, page 964.

It is settled in this state that negligence of a plaintiff, in order to bar recovery, need not be the proximate cause. It is sufficient if such negligence contributed in any manner or degree directly to the injury. Hogan v. Nesbit, 216 Iowa 75, 79, 80, 246 N.W. 270, 272, and citations; Aitchison v. Reter, 245 Iowa 1005, 1011, 64 N.W.2d 923, 927; Brewer v. Johnson, supra, 247 Iowa 483, 486, 72 N.W.2d 556, 558.

The effect of the court's instructions was to treat as surplusage, rather than as an affirmative defense, the allegations of defendant's answer that plaintiff's negligence in the respect stated was the proximate cause of her fall. We think this was more favorable to defendant and less confusing to the jury than to have treated it as an affirmative defense. See in this connection Aitchison v. Reter, supra, 245 Iowa 1005, 64 N.W.2d 923.

IV. Defendant contends the verdict is so grossly excessive as to shock the conscience and establish it is the product of

passion and prejudice. Much of the argument in support of this contention asserts plaintiff's counsel made studied and repeated efforts to inject passion and prejudice into the trial. After study of this long record, including 112 pages of voir dire examination of prospective jurors and 114 pages of arguments to the jury, we cannot agree with the contention. We will mention some of the matters of which defendant complains.

In some questions to prospective jurors plaintiff's counsel referred to "this hospital corporation." It was admitted defendant is a corporation. There was no objection to any of plaintiff's examination of prospective jurors.

In plaintiff's opening jury argument it was twice stated it cost $20 to $30 a day to stay in a hospital, presumably this one. Later in the same argument plaintiff's counsel asserted it was costing plaintiff $20 to $30 a day "in there." Defendant's counsel then excepted to this as a departure from the record and objected to further use of it. Plaintiff's counsel then stated "I'll withdraw." This is the only objection to any of the argument of plaintiff's counsel to the jury. No ruling of the court upon the objection was asked. The record shows the average cost per patient per day in the operation of defendant-hospital was then about $20 and plaintiff's bill for eight days stay there was $226—an average of over $28 a day.

In its brief here defendant objects to some other statements in the arguments of plaintiff's counsel to the jury—mostly in the opening argument. Since no objection was made to any of these statements, nor were they called to the court's attention when they were made, defendant is not entitled to complain of them here. Connelly v. Nolte, 237 Iowa 114, 126, 21 N.W.2d 311, 317, and citations; Agans v. General Mills, Inc., 242 Iowa 978, 983–985, 48 N.W.2d 242, 245, 246; Mongar v. Barnard, 248 Iowa 899, 906–908, 82 N.W.2d 765, 770, 771; Hackaday v. Brackelsburg, 248 Iowa 1346, 1353, 1354, 85 N.W.2d 514, 518; Annotations, 32 A. L. R.2d 9, 86, 87; 78 A. L. R. 1438, 1527.

This from Agans v. General Mills, Inc., later repeated several times, is applicable here: "Counsel for defendants were apparently not disturbed by the argument when made. They might have moved promptly for a mistrial then or at the close

of the argument. They elected to await the jury's decision, if indeed they thought any serious error had been committed. Like the trial court we are powerless now to grant them relief."

█ We have recognized that misconduct in argument may be so flagrantly improper and evidently prejudicial it may be a ground for new trial even though no exception was taken when the argument was made. Connelly v. Nolte, supra, and citations; Hackaday v. Brackelsburg, supra. But the claimed misconduct here is not of that kind.

In about ten instances when defendant's counsel objected to a question plaintiff's counsel asked witnesses, the question was withdrawn. None of the questions was inflammatory. About half of them were to expert witnesses and were objected to merely as leading. There was no unusual occurrence in any of these instances.

There was some effort by plaintiff's counsel toward self-detraction and calling attention to the claimed prowess of his adversary. The principal exchange of this kind between opposing counsel had its inception in a self-detracting remark made by defendant's counsel. Defendant made no objection at the time to the remarks now complained of. The "left-handed compliments" here were fewer and more restrained than those in Connelly v. Nolte, supra, 237 Iowa 114, 125, 126, 21 N.W.2d 311, 317, where the judgment for plaintiff was affirmed.

Comment on some other complaints under this division of defendant's argument is deemed unnecessary.

█ The verdict for $74,051 is very large but we are not persuaded it shocks the conscience or establishes it is the result of passion and prejudice. Plaintiff was 38 when she fell, 41 at the time of trial. The expectancy of a person 41 is 28.43 years. There is evidence the fall caused a herniated intervertebral disc for which she was operated upon twice. A third operation was performed by the same neurosurgeon—a cordotomy in which part of the spinal cord in the region of the neck was severed in an attempt to relieve plaintiff's pain. Plaintiff was hospitalized seven times after her fall for about 175 days in all. At the time of trial she was paralyzed from her right breast down and had no feeling on that side of her body,

including her leg and foot. Plaintiff had also lost some control of her left leg and walked with a somewhat staggering gait. There is evidence plaintiff's condition is permanent and she will require future medical and hospital treatment. The finding is warranted that plaintiff has suffered a great deal of pain requiring frequent use of pain killing drugs and in all likelihood will continue to have pain in the future. Plaintiff's hospital, medical and drug bills exceed $7500. There is testimony plaintiff had an earning capacity of $1000 a year as a part-time waitress for which she has been incapacitated in the future.

In considering the contention the verdict is so excessive as to shock the conscience and show it is the result of passion and prejudice we must take the evidence in the aspect most favorable to plaintiff which it will reasonably bear. We must also give weight to the fact the trial court, with the benefit of seeing and hearing the witnesses, observing the jury and having before it all the incidents of the trial, did not see fit to interfere. Fredrickson v. Heline, 252 Iowa 92, 106 N.W.2d 74, and citations.

The allowance of damages is primarily for the jury and we will not interfere therewith unless it clearly appears the verdict is unconscionable, the result of passion and prejudice, or not warranted by the evidence. Von Tersch v. Ahrendsen, 251 Iowa 115, 123, 99 N.W.2d 287, 292; Hamdorf v. Corrie, 251 Iowa 896, 907, 101 N.W.2d 836, 843; Mallinger v. Brussow, supra, 252 Iowa 54, 57, 105 N.W.2d 626, 628; Fredrickson v. Heline, supra.

If it were not for the error pointed out in Division VIII hereof, for us to interfere with this verdict because of the amount thereof would be to substitute our judgment for that of the jury, something we have repeatedly said we will not do. Mallinger v. Brussow, supra.

V. Defendant asserts it was deprived of a fair and impartial trial in that the court erred in many instances in failing to rule and in rulings upon admissibility of evidence and some other matters.

Plaintiff testified without objection that after she got out of high school in 1934 she did dancing, modeling and wait-

ress work in and around Des Moines, she modeled mostly for a studio in Des Moines and the magazine Better Homes and Gardens published there, she was a waitress in two well-known Des Moines hotels, and did modeling in Chicago, mostly for a photographer.

Over defendant's objection as incompetent, irrelevant, immaterial and having no probative value, a photograph of plaintiff evidently cut from a 1939 issue of Better Homes and Gardens and one taken from the issue of October 14, 1946, of the Chicago Daily News (Exhibits A and B) were received in evidence. Exhibit A shows principally plaintiff's face, hair, one hand and forearm. Exhibit B shows her standing, dressed in a suit and hat. The jury was told the approximate times these pictures were taken and plaintiff admitted they did not accurately represent the way she looked when she entered defendant-hospital.

We think the admission of these exhibits, if error, was not sufficiently prejudicial to warrant a reversal.

At best it is doubtful that the general objection made in the trial court to these pictures was sufficient to call the court's attention to the reason why it was claimed they were inadmissible. See Ferris v. Riley, 251 Iowa 400, 410, 101 N.W.2d 176, 182, and citations; 4 C. J. S., Appeal and Error, section 290b(2) (b), pages 878–882; 3 Am. Jur., Appeal and Error, section 347, page 94.

It is not contended it was improper for plaintiff to show she was engaged in part-time modeling at the times these pictures were taken. The exhibits furnish some corroboration of the oral testimony upon this point. They were not offered as correct representations of plaintiff at the time she fell and the jury could scarcely fail to understand this in view of her testimony.

The admissibility of photographs rests largely in the discretion of the trial judge. Hansen v. Franklin County, 247 Iowa 1287, 1291, 78 N.W.2d 805, 807, and citations; 32 C. J. S., Evidence, section 716.

"A ruling on the admissibility of photographs will not be interfered with on appeal except upon a clear showing of abuse of discretion. [Citation] The trend of authority is to vest more

discretion in the trial court in a matter of this kind. * * * So far as we can find, we have never reversed a case because of the admission of photographs. Other courts have also been slow to reverse because of such a ruling. See, for example [citations]. Reversible error does not necessarily result from the admission of a photograph even though it could properly be excluded. Nolte v. Chicago, R. I. & P. Ry. Co., 165 Iowa 721, 729, 730, 147 N.W. 192." Coonley v. Lowden, 234 Iowa 731, 743, 744, 12 N.W.2d 870, 878.

This from our Nolte decision, supra, seems applicable here (pages 728, 729, of 165 Iowa) : "There was admitted in evidence on part of plaintiff a photograph of deceased dressed in the uniform of a trained nurse, and this is assigned as reversible error. Even if it be true that the photograph had no material value as evidence, we should be unwilling to hold it sufficient ground for ordering a new trial. It was at best and worst a trivial matter. If the woman had not been killed, and she were suing to recover damage for personal injury, no one would think of objecting to her personal presence in the courtroom in view of the jury even if she did not go upon the witness stand; and, if the presence in court of a comely woman modestly dressed cannot be supposed to unduly disturb the judgment of a jury of twelve men of average intelligence acting under the sanction of a solemn oath, surely they ought to be considered immune against the subtle influence which counsel depreciate as arising from the view of a cold unspeaking photograph."

The Nolte case is cited with apparent approval as recently as Hansen v. Franklin County, supra, 247 Iowa 1287, 1291, 78 N.W.2d 805, 807. See also in support of our conclusion Faivre v. Mandercheid, 117 Iowa 724, 732, 733, 90 N.W. 76, 78, 79; State v. Hasty, 121 Iowa 507, 517, 96 N.W. 1115; Young v. Blue Line Storage Co., 242 Iowa 125, 132, 44 N.W.2d 391, 395, 396; Harning v. City of Duluth, 224 Minn. 299, 28 N.W.2d 659, 662; Owens v. Hagenbeck-Wallace Shows Co., 58 R. I. 162, 192 A. 158, 166, 112 A. L. R. 113, 119.

State v. Hasty, supra, in upholding admission of a photograph of an adulteress in a trial of the man, states: "That it was taken several years before the trial furnished no ground

for its rejection as evidence, though she was then much younger."

VI. As to the court's failure to rule upon a few objections to, or motions to strike, evidence or statements of counsel, it is sufficient to say it was defendant's duty to request or demand such a ruling. No such request or demand was made and the objection or motion might be deemed waived. In re Estate of Coleman, 238 Iowa 768, 770, 28 N.W.2d 500, 502, and citations; Dougherty v. City of Sioux City, 246 Iowa 171, 195, 196, 66 N.W.2d 275, 288, and citations; 4 C. J. S., Appeal and Error, section 321c ("Generally, before the trial court can be put in error for the admission or rejection of testimony, it must be clearly shown that the attorney who considered himself aggrieved insisted on a ruling and that the court failed or refused to make one, or * * * made a ruling which was erroneous.") ; Id., section 321f.

In at least one instance the court sustained plaintiff's objection to a question asked her by defendant's counsel but the ruling was placed upon a ground not asserted in the objection. It is not argued the ground on which the ruling was placed was not good. It is often held that if evidence is properly excluded on any ground the ruling will be upheld even though the proper ground for exclusion was not urged in the objection to its admission. In re Will of Smith, 245 Iowa 38, 46, 47, 60 N.W.2d 866, 871, and citations; 4 C. J. S., Appeal and Error, section 291a, page 894. See also Stover v. Central Broadcasting Co., 247 Iowa 1325, 1330, 1331, 78 N.W.2d 1, 4, and citations.

A woman patient who shared the hospital room with plaintiff testified that on the night she fell she was "kind of moaning, carrying on because she had gotten hurt. She said she hurt." Defendant's motion to strike the answer as hearsay was overruled. This seems well within the rule that evidence of declarations of present pain and suffering after an injury is admissible. Langdon v. Ahrends, 166 Iowa 636, 640, 147 N.W. 940, and citations; McDonald v. Franchere Bros., 102 Iowa 496, 499, 71 N.W. 427; 31 C. J. S., Evidence, section 244; 20 Am. Jur., Evidence, section 861.

The same witness said that when plaintiff was discharged from the hospital on May 2d "she seemed to be having

difficulty walking." Defendant's motion to strike the answer
as an opinion and conclusion was overruled. Although the an-
swer was somewhat of a conclusion it was also a description of a
symptom that was apparent to the witness. The ruling was
proper. Langdon v. Ahrends, supra, at pages 640–642 of 166
Iowa, and citations; Stilson v. Ellis, 208 Iowa 1157, 1170, 1171,
225 N.W. 346; Looney v. Parker, 210 Iowa 85, 86, 230 N.W.
570; Koch v. Lynch, 247 Mass. 459, 141 N.E. 677, 678; 32
C. J. S., Evidence, section 513b(1), pages 202, 203; 20 Am.
Jur., Evidence, section 861.

A few other complaints under this assignment have been
considered and found to present no reversible error. We cannot
say defendant was deprived of a fair and impartial trial in any
claimed respect.

 VII. The court did not err in failing to withdraw
from the jury the questions of past medical and hospital bills
on the ground there was no evidence they were incurred as a
result of plaintiff's fall, or loss of future earning capacity on
the ground of lack of evidence to support an allowance therefor.
Evidence was received without objection that the past medical
and hospital bills claimed by plaintiff were incurred as a result
of her fall.

As to loss of future earning capacity defendant's principal
argument is that plaintiff had no earning capacity prior to her
fall. There is testimony plaintiff did part-time waitress or
hostess work as recently as 1954 or 1955 with an average yearly
income of about $1000 in tips and commissions. It is true she
was unemployed when she entered the hospital and had then
been caring for her mother about 15 months. But it may not
be said she had no earning capacity. See Jurgens v. Davenport,
R. I. & N. W. Ry. Co., 249 Iowa 711, 719, 88 N.W.2d 797, 802,
803, and citations; Matloff v. City of Chelsea, 308 Mass. 134,
31 N.E.2d 518; Rodgers v. Boynton, 315 Mass. 279, 52 N.E.2d
576, 577, 578, 151 A. L. R. 475, 478.

 There is substantial evidence plaintiff has suffered a
loss of earning capacity. We have held impairment of physical
capacity in itself may be presumed to impair the general earn-
ing capacity of the person injured. Cubbage v. Estate of Young-

erman, Inc., 155 Iowa 39, 47, 134 N.W. 1074, 1078; Harms v. Ridgeway, 245 Iowa 810, 815, 64 N.W.2d 286, 289. Evidence of plaintiff's prior earnings from such work as she was fitted to do, along with other facts such as her age, experience and life expectancy, furnish some guide as to the extent of loss of her earning capacity. Harms v. Ridgeway, supra; O'Connell · v. City of Davenport, 164 Iowa 95, 99, 145 N.W. 519.

 VIII. We think it was reversible error to overrule defendant's motion to withdraw from jury consideration plaintiff's claim for future medical and hospital expense on the ground, in substance, any allowance therefor would be based on speculation. There is expert evidence it is reasonably certain future medical and hospital expense will be necessary but there is no estimate of the extent or probable cost thereof. Although such expense cannot now be accurately determined, some estimate should be given by one or more qualified witnesses upon which the jury may reasonably fix an allowance for this item. It should not be left to guesswork. Ordinarily the jury should have the benefit of the best available evidence upon such an issue.

We are satisfied our conclusion is supported by a majority of the applicable decisions, especially the more recent ones, and, what is more important, they are sound. See Henderson v. Breesman, 77 Ariz. 256, 269 P.2d 1059, 1060–61; Mendoza v. Rudolf, 140 Cal. App.2d 633, 295 P.2d 445, 448; Borman v. Lafargue, La. App., 183 So. 548, 552; Rice v. Hill, 315 Pa. 166, 172 A. 289, 292; American Produce Co. v. Gonzales, Tex. Com. App., 1 S.W.2d 602, 604; LaFave v. Lemke, 3 Wis.2d 502, 509, 89 N.W.2d 312, 317; Feinsinger v. Bard, 7 Cir., Wis., 195 F.2d 45, 54; Annotation, 69 A. L. R.2d 1261, 1277–79.

25 C. J. S., Damages, section 162b(5), page 829, states: "A plaintiff seeking to recover * * * the cost of future medical treatment must furnish legally adequate proof that he will require such treatment and of its cost."

We are aware of no Iowa decision which supports our conclusion. In fact Rulison v. Victor X-Ray Corp., 207 Iowa 895, 905, 223 N.W. 745, and Kramer v. Henely, 227 Iowa 504, 510, 511, 288 N.W. 610, which follows the Rulison case, may be

taken as holding that evidence of the amount of future medical expense is not essential to an award therefor. What the Rulison case really seems to hold, however, is that the award there of $200 for future medical expense was so small we were not warranted in interfering. In Kramer v. Henely there was expert evidence of the estimated cost of contemplated surgery.

Here plaintiff's counsel argued to the jury she was entitled to from $21,000 to well over $30,000 for future medical and hospital expense. This was on the theory the annual expense for the rest of her life would be from one third to one half the expense incurred each year to the time of trial. In argument here we are told an allowance of $35,000, on a like theory, for future medical, hospital and drug expense would be justified. Such argument overlooks the fact the jury was instructed without objection that an allowance for future medical and hospital expense should be the present worth of the amounts reasonably to be expended in the future therefor. And any such allowance as contended for would be based on guesswork rather than evidence.

We have no way of knowing what part of the verdict was allowed for this item. It may have been a very substantial part. The entire verdict and judgment must therefore be set aside and a new trial ordered.

IX. We find no merit in defendant's objections to submission to the jury of the two charges of negligence which were submitted. They are that defendant was negligent in (1) failing to follow the direction of plaintiff's physician for her confinement to bed and (2) not providing toilet facilities for plaintiff who was confined to her bed and permitting her, unattended, to leave her bed and failing to aid her in walking to and from the rest room.

One complaint now urged against submission of these charges was not made before the instructions were read to the jury, as required by rule 196, Rules of Civil Procedure. Defendant is therefore not entitled to have this complaint considered here. Bunch v. Hanson, 251 Iowa 1097, 1109, 104 N.W.2d 581, 587, and citations.

A complaint against submission of the second of

these charges is that it is a compound allegation, comprising three separate specifications of negligence. But we fail to see how this could have been prejudicial to defendant. The acts were alleged and submitted conjunctively, not disjunctively. Before defendant could have been found negligent in the second respect charged, the jury must find it committed all three acts. Where each of two pleaded specifications of negligence is itself complete and sufficient it may be prejudicial to a plaintiff to combine them so proof of both is required, when proof of either is sufficient evidence of a defendant's negligence. See Clarke v. Hubbell, 249 Iowa 306, 313, 86 N.W.2d 905, 909; Russell v. Chicago, R. I. & P. R. Co., 251 Iowa 839, 102 N.W.2d 881, 887. But these precedents are not applicable here.

Comment on other complaints against submission of these charges of negligence is deemed unnecessary.

X. Defendant's final assigned error is the refusal of its requested jury instruction that if it was within the power of either party to produce stronger or more satisfactory evidence than that offered on any material point "you may take this into consideration in determining the weight to be given such evidence as was produced relative thereto." Defendant argues this request was proper because of plaintiff's failure to question Doctor Bakody, the neurosurgeon who performed the operations upon plaintiff and whom she used as a witness, as to causal connection between plaintiff's condition as he found it and her fall. Although this request was refused, the jury was instructed its determination should be according to the evidence, taking into consideration all the facts disclosed thereby, as well as the lack of evidence, if any, and the reasonable inferences and deductions which may be drawn therefrom.

We think the instruction given was sufficient. It is true we have repeatedly approved this statement of Lord Mansfield: " 'All evidence is to be weighed according to the proof which it was in the power of one side to have produced, and * * * of the other to have contradicted.' " State v. Cotton, 240 Iowa 609, 625, 33 N.W.2d 880, 889, and citations; Knigge v. Dencker, 246 Iowa 1387, 1397, 72 N.W.2d 494, 499, and citations. So far as we can find, however, we have never held the jury must

be instructed in accordance with such a request as defendant's.

Of course the basic rule is that the jury is the sole judge of the credibility of witnesses and the weight and value of their testimony. The jury was so instructed here without objection by either side.

Semmons v. National Travelers Benefit Assn., 180 Iowa 666, 678, 679, 163 N.W. 338, lends support to our holding in this division. An annotation in 5 A. L. R.2d 893, 919-927, discusses decisions dealing with the presumption from failure to produce or examine physicians as witnesses.

For the error pointed out in Division VIII defendant is entitled to a new trial.—Reversed and remanded.

All JUSTICES concur except SNELL, J., who takes no part.