# IN THE SUPREME COURT OF IOWA

No. 19–1724

Submitted March 23, 2021—Filed June 11, 2021
Amended October 12, 2021

**DAVID BUBOLTZ** and **DONNA REECE,**

Appellants,

vs.

**PATRICIA BIRUSINGH, ESTATE OF CLETIS C. IRELAND,** and
**KUMARI DURICK,**

Appellees.

---

Appeal from the Iowa District Court for Pottawattamie County, Craig Dreismeier, Judge.

The plaintiffs appeal the district court's grant of summary judgment on their tortious-interference-with-inheritance claim, and the defendants cross-appeal for a new trial, asserting admission of improper hearsay testimony and improper statements by opposing counsel during closing argument. **AFFIRMED.**

McDermott, J., delivered the opinion of the court, in which all participating justices joined. Christensen, C.J., took no part in the consideration or the decision of the case.

Alexander E. Wonio (argued) of Hansen, McClintock & Riley, Des Moines, and Tyler M. Smith of Smith Law Firm, PLC, Altoona, for appellants.

Charles Wittmack (argued) of Hartung Schroeder Law Firm, Des Moines, and Jamie L. Cox, Paul S. Wilson, and Lonny L. Kolln II of Willson & Pechacek, P.L.C., Council Bluffs, (until withdrawal) for appellees.

**McDERMOTT, Justice.**

In this case, we must answer whether a cause of action for tortious interference with inheritance requires the plaintiff to prove that the defendant had knowledge of the plaintiff's expectation to receive an inheritance from the decedent. The inheritance in dispute comes from a woman named Cletis Ireland, who died in March 2016 at age 92. She was an only child, never married, and had no children. Her estate included her family's century farm where she had lived most of her adult life.

In 2001, Ireland executed a will that would have given her farm in equal shares to David Buboltz, a cash rent farmer who had been leasing about eighty acres on the farm since 1991, and Edith Mae Maertens, her cousin. But in 2015, Ireland executed a new will. The new will removed both Maertens, who had died in 2008, and Buboltz as the beneficiaries of her farm and purported to give the farm instead to Kumari Durick, the daughter of a family friend. Ireland named Durick's mother, Patricia Birusingh, as the executor of her estate in the new will.

Birusingh was married to Ireland's doctor. Ireland, sometime after she executed the 2001 will, grew close to the Birusingh family. When Ireland due to her advancing age could no longer drive a car, Birusingh and Durick began bringing her groceries, driving her to appointments, and running other errands for her. Birusingh and Durick characterized themselves as good neighbors, taking care of an elderly friend in need who, of her own volition, chose to include them in her will.

Buboltz and Reece, on the other hand, characterized Birusingh and Durick as conspirators in a Machiavellian plot, preying on the vulnerabilities of an isolated elderly woman to convince her to bequeath her farm to them in exchange for their help. Shortly after Ireland died, one of Maertens's daughters (and thus Ireland's first cousin once removed)

named Donna Reece, along with Buboltz, filed a lawsuit to set aside Ireland's 2015 will. Their petition alleged several causes of action against Birusingh and Durick, including undue influence and tortious interference with inheritance.

Prior to trial, Birusingh and Durick sought summary judgment on the tortious-interference-with-inheritance claim. They argued that this cause of action requires proof, among other things, that a defendant knew of the plaintiff's expected inheritance from the decedent. Birusingh and Durick claimed that no evidence existed to show that they had knowledge of any expected inheritance by Buboltz or Reece related to Ireland's 2001 will or, for that matter, that they had any knowledge of Ireland's 2001 will whatsoever. Buboltz and Reece countered that, despite no direct evidence proving knowledge, circumstantial evidence created disputes of material fact concerning what Birusingh and Durick knew, and that these factual disputes required the court to deny summary judgment. The district court found none of the plaintiff's circumstantial evidence sufficient to create a dispute of material fact and thus granted the motion and dismissed the plaintiffs' tortious-interference-with-inheritance claim. Buboltz and Reece voluntarily dismissed other claims but maintained the undue influence cause of action.

During the trial, Buboltz and Reece requested that the district court instruct the jury on the dismissed tortious-interference-with-inheritance claim. The district court refused. The jury returned a verdict in favor of Buboltz and Reece on the undue influence claim.

Both sides appeal. Buboltz and Reece appeal the dismissal of the tortious-interference-with-inheritance claim, arguing that the district court erroneously determined that the tort required proof that a defendant possess knowledge of a plaintiff's expected inheritance. They further argue

that, even if we find the tort includes such a requirement, the district court erred in concluding that no dispute of material fact existed on the issue. Birusingh and Durick cross-appeal, arguing a new trial is necessary based on the admission of improper hearsay testimony and improper statements by opposing counsel during his closing argument.

## I.

We begin with the question of whether knowledge of a plaintiff's expectancy of an inheritance from the decedent is an element of tortious interference with inheritance. We review the district court's summary judgment ruling for correction of legal error. *Lewis v. Howard L. Allen Invs., Inc.*, 956 N.W.2d 489, 490 (Iowa 2021).

We first recognized the existence of an "independent cause of action for the wrongful interference with a bequest" in *Frohwein v. Haesemeyer* in 1978. 264 N.W.2d 792, 795 (Iowa 1978). We've addressed this tort again in our opinions in the intervening decades only three times. In the first, in 1991, we held that the plaintiffs were procedurally barred from pursuing a tortious-interference-with-inheritance claim when two valid, uncontested codicils reaffirmed an earlier codicil (which eliminated the plaintiffs' bequest) because the claim in that situation constituted a "collateral attack on testamentary dispositions." *Abel v. Bittner*, 470 N.W.2d 348, 351 (Iowa 1991). In the second, a year later, we held that a plaintiff may pursue a tortious interference claim separate from a will contest even when the plaintiff alleges that the defendant used wrongful means to induce the decedent to execute a new will. *Huffey v. Lea*, 491 N.W.2d 518, 519–20 (Iowa 1992) (en banc). And in the third, decided last term, we overruled *Frohwein* and *Huffey v. Lea* and held that a plaintiff alleging a tortious-interference claim involving a will executed through wrongful means must join the action with a timely will contest. *Youngblut*

*v. Youngblut,* 945 N.W.2d 25, 37 (Iowa 2020). None of our prior cases analyzed or set forth the elements of a tortious-interference-with-inheritance claim.

Buboltz and Reece contend that courts outside Iowa have not included knowledge of a plaintiff's expectancy of an inheritance as an element of the tort. And while they concede that a knowledge requirement has appeared repeatedly as an element in unpublished tortious-interference-with-inheritance opinions from the Iowa Court of Appeals, they question the ancestral basis for its inclusion. Buboltz and Reece's review of the cases reciting the knowledge element begins with an Iowa Court of Appeals case called *Bronner v. Randall,* No. 14–0154, 2015 WL 2089360 (Iowa Ct. App. May 6, 2015). In that case, our court of appeals recited five elements of the tort, including one that required the plaintiff to show that the defendants knew of the plaintiff's expectation that he would receive a bequest when the decedent died. *Id.* at *9.

But Buboltz and Reece contend that the court of appeals was merely reciting the elements from the district court's jury instruction and that the jury instructions were neither contested nor examined for error on appeal. Nonetheless, Buboltz and Reece continue, the court of appeals, in a string of tortious-interference-with-inheritance cases that came later, simply parroted the elements in the jury instruction from *Bronner* (including the knowledge element) without ever analyzing whether proving knowledge of a plaintiff's expectancy is an element of the tort. *See, e.g., Est. of Kline v. Culp,* No. 18–1658, 2019 WL 6358421, at *8 (Iowa Ct. App. Nov. 27, 2019); *Est. of Arnold v. Arnold,* No. 18–1460, 2019 WL 3317381, at *4 (Iowa Ct. App. July 24, 2019); *Cich v. McLeish,* No. 18–0069, 2019 WL 1056804, at *3–4 (Iowa Ct. App. Mar. 6, 2019); *In re Est. of Boman,* No. 16–0110, 2017 WL 512493, at *10 (Iowa Ct. App. Feb. 8, 2017). With the legal framework

for the knowledge element built on such tenuous footing, Buboltz and Reece assert, the district court's reliance on the court of appeals' recitations of the knowledge element offers no sound basis for its ruling.

When we first recognized intentional interference with inheritance in *Frohwein* in 1978, volume 4 of the Restatement (Second) of Torts, which added a new section on "intentional interference with inheritance or gift" had not yet been released. *See* Restatement (Second) of Torts § 774B, at 58 (Am. Law Inst. 1979) [hereinafter Restatement (Second)]. But when we decided *Huffey* about fourteen years later, we looked to the Restatement (Second) for guidance on remedies for this relatively new and developing tort. *Huffey*, 491 N.W.2d at 520–21. Buboltz and Reece ask us to return to the Restatement (Second) in analyzing whether the elements of the tort include knowledge of the plaintiff's expectancy. They recite the same description of intentional interference with inheritance from the Restatement (Second) that we quoted in *Huffey*:

> One who by fraud or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to others for the loss of the inheritance or gift.

*Huffey*, 491 N.W.2d at 520 (quoting Restatement (Second) § 774B, at 58).

Buboltz and Reece contend that this description conveys that plaintiffs must prove *intent* but suggests no requirement that plaintiffs prove defendants' *knowledge* of another's expectation of a bequest. Buboltz and Reece cite comments in the nearby Restatement (Second) section on intentional interference with prospective contracts to suggest that the "intent" requirement merely demands that defendants intend to cause the consequences of their actions (or believe that the consequences are substantially certain to result) without any requirement that

defendants act "knowingly." *Compare* Restatement (Second) § 8A, *with id.* § 766B.

Yet as we stated in *Youngblut,* when new iterations of the Restatement of Torts appear, we have often looked to them for guidance in our decisions. 945 N.W.2d at 32–33. The Restatement (Third) of Torts, which we cited in *Youngblut,* provides a fuller rendering of the tort than the one Buboltz and Reece recite from the Restatement (Second). *See id.* The Restatement (Third) defines the tort this way:

> (1) A defendant is subject to liability for interference with an inheritance or gift if:
>
>> (a) the plaintiff had a reasonable expectation of receiving an inheritance or gift;
>>
>> (b) the defendant committed an intentional and independent legal wrong;
>>
>> (c) the defendant's purpose was to interfere with the plaintiff's expectancy;
>>
>> (d) the defendant's conduct caused the expectancy to fail; and
>>
>> (e) the plaintiff suffered economic loss as a result.

Restatement (Third) of Torts: Liab. for Econ. Harm § 19, at 160–61 (Am. L. Inst. 2020); *see also Barclay v. Castruccio,* 230 A.3d 80, 85 (Md. 2020) (reciting these elements).

The evidence required to establish subsection (c) necessarily includes a requirement that a defendant know of the plaintiff's expected inheritance since a defendant ignorant of a plaintiff's expectancy could never have as her purpose an intention to interfere with it. Stated differently, without knowing of the plaintiff's expectancy, a defendant could not act with *the purpose to interfere with that expectancy.* To steal a phrase from the old song, you can't have one without the other.

Buboltz and Reece argue that the tort requires no knowledge of any particular expectancy of inheritance because all Iowans, whether through a testamentary instrument (such as a will or trust) or the intestacy provisions of the Iowa Code (which apply in the absence of a testamentary instrument), have beneficiaries that will inherit their property. But this tort seeks to remedy a more specific type of intentional wrongdoing. A cause of action for intentional interference with inheritance focuses not on interference with *any* expectancy. The tort is targeted instead to remedy intentional interference with a particular person's expectancy: *the plaintiff's.* Intentional interference requires that a defendant acts with the purpose to deprive *the plaintiff* of her expectancy to that same inheritance. Without such a requirement as to purpose, the tort risks ensnaring citizens who provide assistance to the elderly—conduct that society generally seeks to promote—who then become beneficiaries in wills or trusts without intending to interfere with someone else's known expectancy of that same inheritance. We believe the district court correctly held that the plaintiffs needed to prove the defendants' knowledge of the plaintiffs' expectancy of an inheritance from the decedent.

As discussed, the Restatement (Third) doesn't include an element devoted solely to proof of knowledge. In its recitation of elements of this tort, the district court set out as a separate element of proof that Birusingh and Durick "knew of Plaintiffs' expected inheritance from Cletis." Neither party cites any case that focused specifically on the defendant's knowledge of the plaintiff's expectancy, although a California appellate court similarly recited the defendant's knowledge of the plaintiff's expectancy as its own element. *See Beckwith v. Dahl,* 141 Cal. Rptr. 3d 142, 157 (Ct. App. 2012) ("Third, the plaintiff must plead intent, i.e., that the defendant had knowledge of the plaintiff's expectancy of inheritance and took deliberate

action to interfere with it."); *see also Gomez v. Smith*, 268 Cal. Rptr. 3d 812, 822 (Ct. App. 2020) (reciting the same element). Although we prefer the formulation of elements for this tort set forth in the Restatement (Third) quoted above, which necessarily includes a requirement that defendants possess knowledge of a plaintiff's expectancy, the district court committed no error in considering proof of the defendants' knowledge as its own element.

## II.

Birusingh and Durick argue that no claim for intentional interference with inheritance may stand where the underlying conduct does not include "independently tortious conduct." They contend that undue influence—the conduct alleged to undergird the tortious-interference-with-inheritance claim pleaded in this case—is not "independently tortious in character" and that thus the plaintiffs cannot establish intentional interference with inheritance as a matter of law.

But the defendants never presented this argument in the district court, and the district court never ruled on it. A party ordinarily needs to raise and the district court needs to decide an issue before we address its merits on appeal. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Because we find this issue unpreserved for appellate review, we will not consider it.

## III.

Having found that the district court properly required the plaintiffs to demonstrate that the defendants knew of the plaintiffs' expectancy to an inheritance, we turn to whether the district court nonetheless erred in finding no issue of material fact prevented summary judgment.

Summary judgment is appropriate when the party seeking it demonstrates that there are no disputed issues of material fact and that

application of the law to the undisputed facts compels judgment in that party's favor. *Kostoglanis v. Yates*, 956 N.W.2d 157, 158–59 (Iowa 2021). A disputed issue of fact exists if "reasonable minds can differ on how an issue should be resolved." *Est. of Gottschalk v. Pomeroy Dev., Inc.*, 893 N.W.2d 579, 584 (Iowa 2017) (quoting *Walker v. State*, 801 N.W.2d 548, 554 (Iowa 2011)). We view the facts in the light most favorable to the party resisting the summary judgment motion. *Kostoglanis*, 956 N.W.2d at 159. That said, the resisting party may not rest on mere allegations in its pleadings but rather must set forth specific material facts showing that a genuine disputed issue exists for resolution at trial. *Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 545 (Iowa 2018). On appeal, we consider the evidence before the court at the summary judgment stage, not other or additional evidence that might have been introduced later in the case. Summary judgment "is not a dress rehearsal or practice run" for trial but rather "the put up or shut up moment in a lawsuit, when a [nonmoving] party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Slaughter v. Des Moines Univ. Coll. of Osteopathic Med.*, 925 N.W.2d 793, 808 (Iowa 2019) (alteration in original) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)).

Birusingh and Durick testified in their depositions that they had no knowledge of any expectancy of an inheritance by Buboltz and Reece founded on Ireland's 2001 will (and, for that matter, that they had no knowledge of the 2001 will's existence at all). Buboltz and Reece acknowledged that they had no direct evidence of the defendants' knowledge of their expectancy, and instead sought to show the defendants' knowledge through circumstantial evidence. Direct and circumstantial

evidence are equally probative. *State v. Ernst,* 954 N.W.2d 50, 57 (Iowa 2021); *see also* Iowa R. App. P. 6.904(3)(*p*).

The district court distilled the alleged circumstantial evidence of knowledge that Buboltz and Reece offered into three parts: (1) that Buboltz had been Ireland's farm tenant since 1991, long before Ireland had met Birusingh or Durick; (2) that Birusingh or Durick admitted to having conversations with Ireland about her estate planning and drove Ireland to Ireland's lawyer's office when she executed the 2015 will; and (3) that Buboltz made an offer to Ireland to buy her farm land.

As to the first, a long-term tenancy might well provide evidence of a healthy relationship between landlord and tenant, but it doesn't provide evidence from which to infer knowledge of an inheritance running from landlord to tenant. Similarly, the defendants' knowledge of a close personal relationship (even if a distant familial one) between Reece and Ireland does not, without more, support an inference that the defendants had knowledge of Reece's expected inheritance. Reece, during the entire duration of the defendants' relationship with Ireland, lived in Colorado. We find no basis to conclude that the defendants knew of the plaintiffs' expectancy of an inheritance based merely on the nature of their relationships with Ireland.

As to the second, the district court noted that evidence of the conversations between Birusingh and Ireland about estate planning pertained to Ireland's *future* intentions only, particularly about the disposition of the family farm, surrounding the 2015 will. These discussions provide no indication of communications concerning the 2001 will, let alone any beneficiaries named in it. Evidence that Birusingh drove Ireland to Ireland's attorney's office to create the 2015 will likewise doesn't establish that the defendants knew of the plaintiffs' expectancy.

The district court addressed a related argument by Buboltz and Reece that a jury could conclude, based on the confidential relationship that Birusingh had developed with Ireland, that Birusingh likely had discussions with Ireland about her estate planning. The plaintiffs cited evidence that Birusingh served as Ireland's attorney-in-fact for financial and health decisions under a power of attorney document Ireland signed as evidence of the confidential relationship. But evidence of a confidential relationship, without more, doesn't permit the court to speculate about the content of discussions within that relationship. We will draw reasonable inferences from facts, but we cannot assume facts through conjecture. *Susie v. Fam. Health Care of Siouxland, P.L.C.*, 942 N.W.2d 333, 337 (Iowa 2020) ("[S]peculation is not sufficient to generate a genuine issue of fact." (quoting *Hlubek v. Pelecky*, 701 N.W.2d 93, 96 (Iowa 2005))).

And as to the third argument, Buboltz's offer to buy Ireland's land creates no basis for the defendants to conclude that Buboltz had a reasonable expectation that he would receive the land as an inheritance. If anything, the inference cuts the other direction, since if Buboltz believed he might soon (Ireland would have been about ninety years old when he made the offer) inherit Ireland's land for free by bequest under her will, then paying her for the farm seemingly makes little sense. Buboltz's offer to purchase offers nothing to prove the defendants' knowledge of his expectancy.

The summary judgment record contains no evidence, circumstantial or otherwise, that Ireland's 2001 will, or any other aspects of Ireland's prior estate planning, had ever been shared or discussed with Birusingh or Durick. We find no basis to conclude that the defendants knew of Buboltz's expectancy of an inheritance from Ireland and thus affirm the

district court's grant of summary judgment in the defendants' favor on this issue.

## IV.

Birusingh and Durick in their cross appeal argue that we should grant a new trial because the district court admitted improper hearsay evidence and because the plaintiffs' lawyer made improper and highly prejudicial statements during closing argument.

## A.

The defendants' argument alleging improper hearsay involved questioning of the lawyer who drafted both the 2001 and 2015 wills, James Sulhoff.  Buboltz testified that after Ireland died, he went to Sulhoff's office, asked to review Ireland's will, and spoke with Sulhoff about the will.  At trial, Buboltz's lawyer asked about these events, and the following exchange took place:

> Q.  When you asked about Patti's daughter, what did Jim Sulhoff say?  A.  He said that --

> [DEFENDANTS' LAWYER]: Objection, Your Honor. Hearsay.

> THE COURT: I'm inclined to sustain this.

> [PLAINTIFFS' LAWYER]: He asked the exact same questions of Mr. Sulhoff.

> [DEFENDANTS' LAWYER]: He opened the door on this, Your Honor.  We can approach and discuss it.

> (Off-the-record sidebar.)

> THE COURT: Court will overrule the objection.  Sir, you can answer the question if you can.

> Q.  I'll reask my question.  What did Jim Sulhoff say to you after you asked, "Who's Kumari?"  A.  I asked who Kumari was, and he said that that was her daughter.  And I had asked, "Why was she there?"  And he said that Cletis had said that Patti said, "Give it to my daughter.  I have all the money.  I

have plenty of money. And give it to my daughter." And then he said -- Well, do you want me to continue?

Q. Yeah. What else did he say? A. Then he said, "I know. It's dirty and it stinks." After that I left.

Q. What did you make of that comment? A. I didn't know what to think at the time.

Q. You're not a lawyer? A. No.

Q. You're a farmer, right? A. Yep.

Q. Something sounded wrong to you based off of that? A. I thought it was kind of funny.

Q. Did you think it stunk? A. Yes.

Q. Have you been a Plaintiff to 30some lawsuits? A. No.

Q. Why are you bringing this lawsuit? A. I think what happened here was wrong. When you look back at it, everything over the years, and put it together, and I think that basically it's dirty and it stinks and that they should not be rewarded for what happened here.

Hearsay is a statement that a declarant makes outside the current hearing or trial that is offered into evidence to prove the truth of the matter asserted in the statement. Iowa R. Evid. 5.801. Hearsay is normally inadmissible. *Id.* r. 5.802. Birusingh and Durick argue that Buboltz's testimony includes two hearsay statements. They contend that the first hearsay statement was actually "triple hearsay"—a judicial rarity—because it included testimony from three layers of declarants. In the statement at issue, Buboltz testified that Sulhoff (the first declarant) told Buboltz that Ireland (the second declarant) told Sulhoff that Birusingh (the third declarant) had plenty of money and that Ireland should give her farm to Birusingh's daughter, Durick. (In the quoted portion above, here's how Buboltz phrased it: "And he said that Cletis had said that Patti said . . . .") The second hearsay statement is considerably more direct: Buboltz

testified that Sulhoff (the declarant) said that Ireland's bequest of the farm to Durick is "dirty and it stinks."

Both the first and second statements (including those within the triple-hearsay statement) were made outside the trial. Birusingh and Durick argue that the plaintiffs introduced the statements at trial to prove the truth of the matters asserted, specifically (1) that Birusingh already had "plenty of money" and asked Ireland to give her farm instead to Durick and (2) that Ireland's own attorney thought that Ireland's bequest to them was "dirty" and "stinks."

Although we review most evidentiary rulings for abuse of discretion, we review hearsay claims for correction of errors at law. *Hawkins v. Grinnell Reg'l Med. Ctr.*, 929 N.W.2d 261, 265 (Iowa 2019). But before we consider the merits of the admissibility of the statements, we must first address the threshold question of error preservation. To preserve error on an objection to the admission of evidence at trial, counsel must make known a specific objection to give the trial court an opportunity to rule on the objection and correct any error. *State v. Dessinger*, 958 N.W.2d 590, 598 (Iowa 2021). Where a party makes an objection and the court overrules the objection, we generally do not require a party to make a repeated objection on the same ground to testimony of the same kind. *Id.*

Reviewing the portion of the record quoted above, the plaintiffs' lawyer asked Buboltz: "When you asked about Patti's daughter, what did Jim Sulhoff say?" and the defendants' lawyer objected. After some on-the-record comments by counsel and an off-the-record sidebar, the district court overruled the objection. The plaintiffs' lawyer then stated: "I'll reask my question. What did Jim Sulhoff say to you after you asked, 'Who's Kumari?'" This question pertained to the same testimony sought with the prior objected-to-and-overruled question (indeed, it's phrased as a "reask"

of the prior question), thus we find counsel didn't need to repeat the objection. But the defendants didn't lodge any objection to, and thus didn't flag for the district court to consider, any hearsay-within-hearsay problem during Buboltz's testimony. That a hearsay-within-hearsay issue might be lurking isn't evident from a question asking what Sulhoff told Buboltz about Kumari Durick. The next question followed on the witness's statement at the end of his answer, asking whether he should continue, with the response, "Yeah. What else did he say?" Because this question asked the witness to continue with his answer to the prior question, it likewise didn't require a repeated objection. But all the questions thereafter (starting with "What did you make of that comment?") called for different information, and did not relate to testimony of the same kind, and thus the failure to object to these questions renders them unpreserved for appeal. The ensuing questions also didn't call for hearsay, so the hearsay objection wouldn't fit in any event.

In examining the defendants' claim of error in admitting Buboltz's testimony concerning Sulhoff's hearsay statements, the plaintiffs point to inconsistent testimony from Sulhoff on the first day of the trial. That's when the *defendants'* lawyer engaged in this exchange with Sulhoff:

> Q. Mr. Sulhoff, as part of this case there's been testimony in deposition that you told someone that you think the circumstances surrounding Cletis's Will were dirty or they stunk. Do you ever recall telling anyone that Cletis's Will was dirty or that it stunk? A. Not that I remember, no.

A party may attack a witness's credibility by offering evidence that the witness made an out-of-court statement inconsistent with the witness's in-court testimony on a material issue. *State v. Belken*, 633 N.W.2d 786, 794 (Iowa 2001). Under Iowa Rule of Evidence 5.613(*b*), the party's out-of-court statement is admissible to impeach the witness about

the inconsistent in-court testimony so long as the witness is given an opportunity to explain or deny the out-of-court statement and an adverse party has an opportunity to question the witness about it. Using the statement as impeachment doesn't depend on the truth of the inconsistent statement, which means the out-of-court statement is *not* hearsay when offered solely to impeach in this manner. *Brooks v. Holtz*, 661 N.W.2d 526, 530–31 (Iowa 2003). The defendants in this case not only had an opportunity to question Sulhoff about the out-of-court statements, the defendants preemptively questioned Sulhoff about the statements even before the plaintiffs raised the issue.

For an out-of-court statement to be admissible as impeachment evidence, there must be a contradictory in-court statement by the witness. *State v. Swift*, 955 N.W.2d 876, 882 (Iowa 2021). Sulhoff's in-court statement that he recalled making no statement about the 2015 will being "dirty" or that it "stinks" contradicted his out-of-court statement. An adverse party is permitted to impeach a witness's claimed lack of recollection. *Id.*; *State v. Russell*, 893 N.W.2d 307, 317 (Iowa 2017). The district court properly admitted Buboltz's testimony as evidence impeaching Sulhoff's memory or ability to recollect his prior statements about the circumstances surrounding the will. Regarding the defendants' argument that that plaintiffs later in the trial improperly characterized or used this evidence not for its admitted impeachment purpose but as substantive evidence for the truth of the matters asserted, the defendants failed to make any further objection and thus failed to preserve error to enable our review.

What's more, the defendants themselves repeated during the trial the challenged hearsay testimony that Birusingh didn't want the farm and that she told Ireland as much. One might presume Birusingh's alleged

lack of need for Ireland's inheritance as tending to support Birusingh's defense. Jury Instruction No. 11 required the plaintiffs to prove that the defendants were "inclined to influence Cletis Ireland unduly for the purpose of getting an improper favor." Lack of wealth, as the defendants themselves seemed to suggest, might tend to position a defendant as *more* inclined to intentionally interfere with an inheritance. In any event, the testimony was properly admitted for its impeachment purpose, and we decline the defendants' request to order a new trial on this basis.

B.

The defendants also seek a new trial based on alleged improper statements by the plaintiffs' lawyer during closing argument. The defendants first complain that the plaintiffs' lawyer improperly spoke to the justness of his clients' cause by discussing his own personal concerns about fear of not giving his clients "the argument that they deserve or that I didn't present the case that they entrusted me to present for them and for Cletis." The defendants further argue that the plaintiffs' lawyer then fabricated statements by Ireland that weren't in the record.

But the defendants neither lodged an objection to these statements nor moved for a mistrial based on them. Ordinarily, when a party makes no objection to improper statements in closing argument or motion for mistrial, "such conduct indicates a willingness of counsel to take his chances on a favorable verdict and constitutes a waiver of the misconduct." *State v. Phillips*, 226 N.W.2d 16, 18–19 (Iowa 1975). Although we have recognized that a statement during closing argument can be "so flagrantly improper and evidently prejudicial" as to warrant a new trial even in the absence of an objection, *see Shover v. Iowa Lutheran Hospital*, 252 Iowa 706, 717, 107 N.W.2d 85, 91 (1961), these statements

fall far short of that mark.  The defendants failed to preserve error for our review on this issue.

The defendants further object to what they label self-aggrandizing statements intended to bolster counsel's own credibility before the jury while also vouching for the credibility of his clients.  The relevant passage from the closing argument transcript states:

> And I'm in a real fortunate situation with my law firm.  I don't have to take every case that comes in the door.  I get to pick and choose alluding to how difficult what Mr. Cox does and, by extension, pat myself on the back a little bit.  It's very difficult trying cases.  It's a subspecialty that 99 percent of your lawyers would not do any more than I would never – you'd never come to me, "Help me with this bankruptcy."  I wouldn't know where to start, frankly.  In trial work I get to pick my clients.  That means I get to take the first measure of them.  I feel like I've built up this good ability to read if somebody is snowballing me.  David never struck me as anything but an earnest --
>
> [DEFENDANT'S LAWYER]: Your Honor, I'm going to object to this.  May we approach the bench?
>
> (Off-the-record sidebar.)
>
> THE COURT: Counsel, please continue.

Counsel are permitted some latitude in making their closing arguments.  *State v. Carey*, 709 N.W.2d 547, 554 (Iowa 2006).  Yet counsel may not during closing argument vouch for a witness's credibility based on personal belief, counsel's experience in similar cases, or any other ground outside the evidence at trial.  *State v. Williams*, 334 N.W.2d 742, 744 (Iowa 1983).  The plaintiffs' lawyer veered into improper argument when he discussed taking of the measure of his own client and his own ability to read when a client is "snowballing" him to convey his client's earnestness to the jury.  *See State v. Graves*, 668 N.W.2d 860, 874 (Iowa 2003); *see also* Iowa R. Prof'l Conduct 32:3.4(e) (a lawyer during trial shall not "assert personal knowledge of facts in issue except when testifying as

a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, [or] the culpability of a civil litigant").

The portion quoted above shows that the defendants' lawyer properly objected. But following the sidebar, the record doesn't indicate any ruling. The plaintiffs' counsel thereafter continued with his closing argument, simply moving on to a different subject. Any prejudice to the defendants from these objectionable statements would have been minimal and thus well below the threshold for granting a new trial. *See Mays v. C. Mac Chambers Co.*, 490 N.W.2d 800, 803 (Iowa 1992). Moreover, the defendants never moved for a mistrial, sought a remedial instruction, or filed a motion for new trial based on these comments. On this record, we decline to grant the defendants a new trial on this issue.

## V.

For these reasons, we affirm the judgment of the district court.

**AFFIRMED.**

All justices concur except Christensen, C.J., who takes no part.